KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 07CR3402-IEG |
| Plaintiff, | ) ) ) | HEARING DATE:    August 20, 2008<br>TIME:             10:00 a.m. |
| v. | ) ) ) | UNITED STATES' RESPONSE TO<br>DEFENDANT'S MOTIONS: |
| ISAAC RAMOS, | ) ) ) ) | (1)    DISMISS DUE TO INVALID<br>         DEPORTATION;<br>(2)    SUPPRESS STATEMENTS;<br>(3)    SUPPRESS EVIDENCE; |
| Defendant. | ) ) ) | (4)    EXCLUDE 404(B) AND 609<br>         EVIDENCE; AND<br>(5)    ADMIT EVIDENCE OF ANY I-130. |

TOGETHER WITH STATEMENT OF FACTS,
MEMORANDUM OF POINTS AND
AUTHORITIES

1    COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2    KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States

3    Attorney, and hereby files its Response and Opposition to Defendant's above-referenced motions. This

4    Response and Opposition is based upon the files and records of the case together with the attached

5    statement of facts and memorandum of points and authorities.

6                                              **I**

7                             **STATEMENT OF THE CASE**

8    On December 19, 2007, a federal grand jury in the Southern District of California returned an

9    Indictment charging Defendant Isaac Ramos ("Defendant") with being a deported alien found in the

10   United States after deportation in violation of 8 U.S.C. § 1326.  On December 20, 2007, Defendant was

11   arraigned on the Indictment and entered a not guilty plea.  The Court set a motion hearing date which

12   was continued on January 28, 2007, March 3, 2008, April 1, 2008, June 2, 2008, and July 21, 2008.

13   On July 16, 2008, Defendant filed motions to dismiss due to an invalid deportation, suppress

14   statements, suppress evidence, and file further motions.  On August 7, 2008, Defendant filed additional

15   arguments in support of his motions to dismiss due to an invalid deportation, suppress statements, and

16   suppress evidence.  On August 12, 2008, the Court tentatively denied Defendant's motion to suppress

17   evidence and heard testimony regarding Defendant's field statements.  The matter was continued to

18   August 20, 2008.  The United States now responds to Defendant's motions.

19                                             **II**

20                             **STATEMENT OF FACTS**

21   **A.      The Instant Offense**

22   On Wednesday, November 21, 2007, at approximately 6:30 p.m., Border Patrol Agents Lindsey

23   Nye and Robert Schiller were assigned to the Jamul, California area of operations.  They responded to

24   a call from infrared scope operator Border Patrol Agent Erick Cortez.  During the call, Border Patrol

25   Agent Cortez stated that he had just seen six people south of Otay Lakes Road.  Upon arrival, Border

26   Patrol Agents Nye and Schiller exited their vehicles and began to search the area.  With some assistance

27   from Border Patrol Agent Cortez, Border Patrol Agents Nye and Schiller located a group of five

28

1 individuals. Border Patrol Agent Nye identified himself in both the English and Spanish languages.

2 He requested that the individuals exit the brush and sit down for safety reasons.

3      Border Patrol Agent Thomas Ward with his narcotics / human detector dog also responded to

4 the call. Border Patrol Agent Ward and his dog began searching the same area. The dog gave a passive

5 alert to a sixth individual. While Border Patrol Agent Ward rewarded his dog, Border Patrol Agent

6 Schiller escorted the sixth individual to the larger group. Border Patrol Agent Nye obtained statements

7 from each of the six individuals regarding their citizenship and authorization to enter the United States.

8 Each of the six, including Defendant, admitted to being citizens of Mexico with no legal right to remain

9 in the United States. At approximately 6:40 p.m., the six were transported to Brown Field Border Patrol

10 Station.

11      At the station, Defendant was entered into the Automated Biometric Identification System. This

12 provided Defendant's true identity and some of his prior criminal and immigration histories.

13      **B.**    **Defendant's Statements**

14      At approximately 11:30 p.m., while being video taped, Border Patrol Agent Brian Lee advised

15 Defendant in the Spanish language of his <u>Miranda</u> warnings as witnessed by Border Patrol Agent

16 Andrew Roman. Defendant stated that he understood his rights and wanted to remain silent. Next,

17 Border Patrol Agent Lee advised Defendant in the Spanish language of his communication rights with

18 the Mexican Consulate as witnessed by Border Patrol Agent Roman. Defendant stated that he

19 understood this right and did not want to speak with the Consulate.

20      **C.**    **Defendant's Prior Statements**

21      On or about May 9, 2006, Defendant was interviewed at Golden State, CCF, McFarlane,

22 California for purposes of determining his eligibility to remain in the United States by Special Agent

23 Leroy Odom. Defendant freely admitted to entering the United States without inspection and to being

24 a citizen of Mexico. (Gov't Ex. 1.)

25      On or about May 11, 2006, Defendant was interviewed for purposes of determining his eligibility

26 to remain in the United States by Detention Officer Christine Olsen. Defendant freely admitted to

27 entering the United States without inspection and to being a citizen of Mexico. (Gov't Ex. 1.)

28

1    On or about May 11, 2006, Defendant completed a Stipulation, witnessed by Detention Officer

2   Christine Olsen, in which Defendant freely admitted to entering the United States without inspection

3   and to being a citizen of Mexico.  (Def.'s Ex. 13.)

4    On or about December 28, 2006, Defendant was interviewed at Avenal State Prison, Avenal,

5   California for purposes of determining his eligibility to remain in the United States by Immigration

6   Enforcement Agent Peter Niebla.  Defendant freely admitted to entering the United States without

7   inspection and to being a citizen of Mexico.  (Gov't Ex. 1.)

8    **D.    Defendant's Criminal and Immigration History**

9    Defendant has a series of convictions which include the following:  Defendant was convicted

10   on November 14, 2005, of false imprisonment, in violation of California Penal Code § 236 and received

11   16 months in prison.  He was convicted on October 13, 2004, of corporal injury to a spouse, in violation

12   of California Penal Code § 273.5(a) and received 73 days in jail.  He was convicted on July 15, 2004,

13   of possessing a controlled substance (methamphetamine), in violation of California Health and Safety

14   Code § 11377 and received 16 months in prison.  He was convicted on February 18, 2004, of battery

15   on a former spouse, in violation of California Penal Code § 243(e)(1) and received 60 days in jail.  He

16   was convicted on July 17, 2003, of battery on a former spouse, in violation of California Penal Code

17   § 243(e)(1) and received 90 days in jail.

18    Concerning his immigration history, on May 11, 2006, Defendant was ordered deported.  On

19   May 11, 2006 and January 5, 2007, he was physically removed from the United States to Mexico.

20    **III**

21    **MOTION TO DISMISS SHOULD BE DENIED**

22    Defendant argues that the Indictment should be dismissed due to an invalid deportation.  He

23   argues that the statutes and regulations used for a stipulated removal are unconstitutional.  However, the

24   Ninth Circuit has already held stipulated removals are constitutional.

25    Moreover, the Immigration Judge complied with 8 C.F.R. § 1003.25(b). Under the C.F.R., if the

26   alien is unrepresented, the Immigration Judge must determine that the alien's "waiver is voluntary,

27   knowing, and intelligent."  The Order, which Defendant inexplicably failed to attach as an exhibit,

28   provides that "[t]he Court finds the alien's waiver voluntary, knowing, and intelligent." (Gov't Ex. 2.)

3

1   As found by the Immigration Judge, in the Stipulation, Defendant admitted that all of the allegations in

2   the Notice to Appear were true.  As a result, Defendant was removable.  As found by the Immigration

3   Judge, Defendant made "no application for relief from removal."  Therefore, Defendant was ordered

4   deported.

5       **A.      STIPULATED REMOVALS ARE AUTHORIZED BY CONGRESS**

6           Stipulated removals are expressly authorized by Congress.  As provided in Title 8, the Attorney

7   General is required to promulgate a regulation governing such a procedure:

8           The Attorney General shall provide by regulation for the entry by an immigration
        judge of an order of removal stipulated to by the alien (or the alien's representative) and
9       the Service.  A stipulated order shall constitute a conclusive determination of the alien's
        removability from the United States.

10

11  8 U.S.C. § 1229a(d).

12          The pertinent regulation is set forth at 8 C.F.R. § 1003.25(b)[1/], which provides as follows:

13          (b)     Stipulated request for order; waiver of hearing.  An Immigration Judge may enter
        an order of deportation, exclusion or removal stipulated to by the alien (or the alien's
14      representative) and the Service.  The Immigration Judge may enter such an order without
        a hearing and in the absence of the parties based on a review of the charging document,
15      the written stipulation, and supporting documents, if any.  If the alien is unrepresented,
        the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and
16      intelligent.  The stipulated request and required waivers shall be signed on behalf of the
        government and by the alien and his or her attorney or representative, if any.  The
17      attorney or representative shall file a Notice of Appearance in accordance with
        § 1003.16(b).  A stipulated order shall constitute a conclusive determination of the
18      alien's deportability or removability from the United States.  The stipulation shall
        include:

19
            (1)     An admission that all factual allegations contained in the
20                  charging document are true and correct as written;

21          (2)     A concession of deportability or inadmissibility as charged;

22          (3)     A statement that the alien makes no application for relief under
                    the Act;
23
            (4)     A designation of a country for deportation or removal under
24                  section 241(b)(2)(A)(I) of the Act;

25          (5)     A concession to the introduction of the written stipulation of the
                    alien as an exhibit to the Record of Proceeding;
26

27
        _____

28          [1/]This regulation was previously codified at 8 C.F.R. § 3.25(b).  In 2003, following the creation
    of the Department of Homeland Security, it was transferred and redesignated at section 1003.25(b).
    See 98 Fed. Reg. 9824-01 (Feb. 28, 2003).

                                        4                                          07CR3402-IEG

1
2
      (6)    A statement that the alien understands the consequences of the stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently;

3
4
      (7)    A statement that the alien will accept a written order for his or her deportation, exclusion or removal as a final disposition of the proceedings; and

5
      (8)    A waiver of appeal of the written order of deportation or removal.

6
8 C.F.R. § 1003.25(b).

7 Pursuant to a stipulated removal, an alien "concedes his deportability, waives his right to a

8 hearing, waives all discretionary forms of relief from deportability, and waives his right to appeal the

9 immigration judge's order. . . . The immigration judge, without the presence of either the alien or the

10 representative from the government, examines the stipulation and issues an order of deportation if it

11 appears the alien voluntarily, knowingly, and intelligently entered into the stipulation." United States

12 v. Ramnath, 958 F. Supp. 99, 101 (E.D.N.Y. 1997) (citing former 8 C.F.R. § 3.25(b)).

13 **B.** **DEFENDANT'S 2006 STIPULATED REMOVAL COMPLIES WITH THE C.F.R.**

14 Attached to Defendant's July 16, 2008 Motion as exhibits are true and correct copies of

15 documents pertaining to Defendant's 2006 stipulated removal: (1) a Notice to Appear ("NTA") (Def.'s

16 Ex. 10-11); (2) a "Stipulated Request for Removal Order and Waiver of Hearing" (Def.'s Ex. 13); and

17 (3) a "Government's Concurrence to Stipulated Request for Removal Order and Waiver of Hearing"

18 (Def.'s Ex. 12). The United States has attached the "Decision and Order of the Immigration Judge."

19 (Gov't Ex. 2.)

20 The Stipulation executed by Defendant satisfies each of the eight requirements set forth in 8

21 C.F.R. § 1003.25(b). (Def.'s Ex. 13.) Namely, the Stipulation includes:

22
23
      (1)    an admission that all factual allegations contained in the charging document are true and correct, at **paragraph 6** ("I admit that all of the factual allegations contained in the NTA are true and correct as written.");

24
25
26
      (2)    a concession of deportability or inadmissibility as charged, at **paragraph 7** ("I agree and concede that I am deportable or inadmissible as charged on the NTA.");

27
28
      (3)    a statement that Defendant is making no application for relief under the Immigration and Nationality Act, at **paragraph 8** ("I understand that I may qualify for one or more forms of relief from removal, including voluntary departure. I knowingly and intelligently waive my right to apply for any relief or protection

from removal for which I may be legible under the Immigration and Nationality Act or any other provision of law. Such relief and protection may include voluntary departure, adjustment of status, suspension of deportation or cancellation of removal, registry, naturalization, political asylum, withholding of removal, and protection under the Convention Against Torture.");

(4)     a designation of a country for removal, at **paragraph 9** ("I choose __Mexico__ as the country designated for removal.");

(5)     a concession to the introduction of the written stipulation as an exhibit to the Record of Proceeding, at **paragraph 10** ("I understand and agree that this written statement/stipulation will be introduced as exhibit to, and will be made part of the Record of the Proceedings.");

(6)     a statement that Defendant understands the consequences of the stipulated request and that he is entering the request voluntarily, knowingly and intelligently, at **paragraph 10** ("___ I have read or _X_ I have had read to me in a language I understand, this entire document. I fully understand its consequences. I submit this request for removal voluntarily, knowingly and intelligently. I realize that by signing the document, I will be removed from the United States.");

(7)     a statement that Defendant will accept a written order for his deportation, exclusion or removal as a final disposition of the proceedings, at **paragraph 12** ("I understand and agree that I will accept a written order for my removal as a final disposition of these proceedings."); and

(8)     a waiver of appeal of the written order of deportation or removal, also at **paragraph 8** ("I waive my right to appeal of the written order of removal.").

Therefore, the May 2006 removal was valid. Defendant was given an opportunity to appear before an immigration judge, but he voluntarily, knowingly, and intelligently waived that right. As such, his Stipulation to removal was a "conclusive determination of [his] deportability or removability from the United States." 8 C.F.R. § 1003.25(b).

Defendant argues that his waiver was invalid since he did not sign the Form I-826 on May 9, 2006 (Ex. 2) and did not sign the second page of the May 9, 2006 Notice to Appear (Ex. 3) requesting an immediate hearing before an immigration judge. However, official records which show on their face a valid waiver of rights in connection with a deportation proceeding are "presumed to be correct." United States v. Galicia-Gonzalez, 997 F.2d 602, 603-04 (9th Cir. 1993) (per curiam) (citing United States v. Carroll, 932 F.2d 823, 825 (9th Cir. 1991)). Thus, where the United States introduces official

1   records which on their face show a valid waiver of rights in connection with a deportation proceeding,

2   the burden shifts to the defendant to come forward with evidence then tending to prove the waiver was

3   invalid. Id. at 603. Akin to Galicia-Gonzalez, Defendant has not presented any evidence to show that

4   the waiver was invalid.

5        Even if he did not understand the later significance of the Stipulation, it does not matter. By way

6   of analogy, in the area of appellate waivers, the Ninth Circuit has made clear that a defendant's waiver

7   is not invalidated by failure to foresee future claims. United States v. Johnson, 67 F.3d 200, 202-03 (9th

8   Cir. 1995). The Ninth Circuit has also rejected the contention that a plea is rendered infirm because the

9   defendant did not know exactly what issues would arise after sentencing. United States v. Navarro-

10   Botello, 912 F.2d 318, 320 (9th Cir. 1990). "Just because the choice looks different to [the defendant]

11   with the benefit of hindsight does not make the choice involuntary." Id.; see also United States v.

12   Cortez-Arias, 425 F.3d 547, 548 (9th Cir. 2005) (ruling a defendant may not renege even when a later

13   clarification in law shows he has a claim).

14        Moreover, any claim of a lack of waiver is not supported by the Notice to Appear or Stipulation.

15   Defendant signed the May 11, 2006 Notice to Appear which provides: "[t]o expedite a determination

16   of my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing

17   before an immigration judge." (Def.'s Ex. 11.) The Notice to Appear also provides: "If you fail to

18   attend the hearing at the time and place designated on this notice, or any date and time later directed by

19   the Immigration Court, a removal order may be made by the immigration judge in your absence. . . ."

20   (Def.'s Ex. 11.) The Notice to Appear is signed by Defendant and witnessed by Detention Officer

21   Christina Olsen. As noted previously, the Stipulation that he signed specifically stated that he was

22   waiving his right to a hearing and to apply for relief. The Stipulation is signed by Defendant and

23   witnessed by Detention Officer Olsen, the same immigration officer that witnessed the Notice to Appear.

24   Defendant points out that he did not initial all the Stipulation's pages. However, he did sign the

25   Stipulation certifying in paragraph 15 that all the information in the Stipulation was true. (Def.'s Ex.

26   11.) In other words, he certified that paragraphs 1-14 were true including that he received a copy of the

27   May 11, 2006 Notice to Appear. This certification also includes a paragraph in which Defendant waived

28   the right to apply for any relief. So, Defendant's claim that immigration officers failed to advise him

that he might be entitled to a 212(h) waiver due to an approved I-130 does not matter. He was advised of his eligibility for relief on a variety of grounds and he waived it. Nothing was hidden from Defendant. Defendant never states that he was somehow coerced into signing the Stipulation waiving his rights. Absent that such a showing, he cannot satisfy his burden and the waiver is presumed to be valid.

## C.  THE NINTH CIRCUIT HAS EXPRESSLY UPHELD STIPULATED REMOVALS

The conclusion that Defendant's May 2006 removal is valid does not just follow from the plain language of the governing regulation. It also finds support in caselaw. The Ninth Circuit has squarely held that where, as here, a stipulation to removal shows that an alien "was advised of all relevant rights, waived them and conceded his deportability," the stipulation "satisfies the government's burden of showing a valid deportation for purposes of section 1326." United States v. Galicia-Gonzalez, 997 F.2d 602, 603-04 (9th Cir. 1993) (per curiam). In so holding, Galicia-Gonzalez noted that official records which show on their face a valid waiver of rights in connection with a deportation proceeding are "presumed to be correct." Id. (citing United States v. Carroll, 932 F.2d 823, 825 (9th Cir. 1991)). The Court also held that stipulated removals **cannot** be challenged on the basis that a hearing before an immigration judge might have shown the alien was eligible for relief from removal. Id. at 604 ("Even if a hearing had been held, it would have accomplished nothing, because defendant had given up the game by conceding he was deportable. Defendant therefore cannot show prejudice under Proa-Tovar.").

## D.  DEFENDANT CANNOT MEET THE REQUIREMENTS UNDER SECTION 1326(d) TO CHALLENGE THE VALIDITY OF HIS DEPORTATION

Aside from the fact that the May 2006 deportation is valid on its face, Defendant's motion to dismiss should be denied because he cannot meet the requirements to collaterally attack the deportation. A defendant charged with being a deported alien found in the United States in violation of 8 U.S.C. § 1326 may collaterally attack a deportation order. See United States v. Mendoza-Lopez, 481 U.S. 828, 837-39 (1987). To sustain a collateral attack, the defendant must establish that:

(1)    he exhausted any administrative remedies that may have been available to seek relief against the order;

(2)    the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and

1   (3)     the entry of the order was fundamentally unfair.

2   8 U.S.C. § 1326(d). Defendant fails to meet all three requirements and thus, his motion to dismiss should

3   be denied.

4                    **1.     Defendant Did Not Exhaust Administrative Remedies**

5        In order to collaterally challenge an underlying removal in an illegal re-entry case, a defendant

6   must exhaust his administrative remedies. 8 U.S.C. § 1326(d)(1); United States v. Garza-Sanchez, 217

7   F.3d 806, 808 (9th Cir. 2000) ("A defendant charged under 8 U.S.C. § 1326 may not collaterally attack

8   the underlying deportation order if he or she did not exhaust administrative remedies in the deportation

9   proceedings, including direct appeal of the deportation order."). This generally means the alien must

10  appeal his order of removal to the Board of Immigration Appeals ("BIA"). Id.; cf. Rashtabadi v. INS,

11  23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an appeal to the BIA constitutes a

12  failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear

13  the matter.").

14       Here, in stipulating to his removal in 2006, Defendant clearly failed to appeal his removal order

15  to the BIA. After all, an express term of the Stipulation was a waiver of the right to appeal. This was

16  after he was advised he may be eligible for various forms of relief under the Immigration and

17  Nationality Act ("INA") like 212(h) relief in the Stipulation. Moreover, the Immigration Judge found

18  that "appeal [was] waived by both [Defendant and the United States]."

19       Defendant may claim that he is exempt form the exhaustion requirement of 8 U.S.C. 1326(d).

20  However, official records which show on their face a valid waiver of rights in connection with a

21  deportation proceeding are "presumed to be correct." Galicia-Gonzalez, 997 F.2d at 603-04 (citing

22  United States v. Carroll, 932 F.2d 823, 825 (9th Cir. 1991)). Thus, where the United States introduces

23  official records which on their face show a valid waiver of rights in connection with a deportation

24  proceeding, the burden shifts to the defendant to come forward with evidence then tending to prove the

25  waiver was invalid. Id. at 603.

26       Akin to Galicia-Gonzalez, Defendant has not presented any evidence to show that the waiver

27  was invalid. The Stipulation to which Defendant agreed states that he read and understood the

28  Stipulation.

9

Even if he did not understand the later significance of the Stipulation, it does not matter. By way of analogy, in the area of appellate waivers, the Ninth Circuit has made clear that a defendant's waiver is not invalidated by failure to foresee future claims. <u>United States v. Johnson</u>, 67 F.3d 200, 202-03 (9th Cir. 1995). The Ninth Circuit has also rejected the contention that a plea is rendered infirm because the defendant did not know exactly what issues would arise after sentencing. <u>United States v. Navarro-Botello</u>, 912 F.2d 318, 320 (9th Cir. 1990). "Just because the choice looks different to [the defendant] with the benefit of hindsight does not make the choice involuntary." <u>Id.</u>; <u>see also</u> <u>United States v. Cortez-Arias</u>, 425 F.3d 547, 548 (9th Cir. 2005) (ruling a defendant may not renege even when a later clarification in law shows he has a claim).

Moreover, the Stipulation that he signed specifically stated that he may be entitled to relief. Defendant's claim that he did not know he was entitled to 212(h) relief is not supported by the Stipulation.

Additionally, any claim that Defendant he is exempt from the exhaustion requirement also fails. Not only was Defendant ineligible for 212(h) relief as discussed below, the Ninth Circuit has held that stipulated removals cannot be challenged on the basis that a hearing before an immigration judge might have shown the alien was eligible for relief from removal. <u>Galicia-Gonzalez</u>, 997 F.2d at 604 ("Even if a hearing had been held, it would have accomplished nothing, because defendant had given up the game by conceding he was deportable. Defendant therefore cannot show prejudice under <u>Proa-Tovar</u>.").

Contrary to Defendant's argument, he is <u>not</u> exempt for the exhaustion requirement and cannot meet the first prong to collaterally attack his deportation. Therefore, Defendant's motion to dismiss should be denied.

### 2. The Deportation Proceedings Provided Defendant with the Opportunity for Judicial Review

Defendant is apparently arguing that he was deprived of the opportunity for judicial review because of the failure of the Immigration Judge to obtain a valid appellate waiver and failure to inform Defendant of his eligibility for relief from deportation. Defendant apparently claims that he meets the second prong of 8 U.S.C. § 1326(d) for the same reasons he claims he is exempt from meeting the first prong. And for the same reasons as explained above, Defendant's argument fails. Furthermore, as in

1    Galicia-Gonzalez, the Stipulation in this case, shows that Defendant was advised of all his rights under

2    the immigration laws. Specifically, the Stipulation shows that Defendant was advised of and waived

3    his appellate rights. Defendant was advised that he <u>may</u> qualify for one or more forms of relief from

4    removal, including relief under the INA and that he waived his right to apply for relief. Lastly, the

5    Immigration Judge reviewed Defendant's Stipulation wherein he waives a personal appearance before

6    an immigration judge. The Order provides that Defendant waived a personal hearing before the

7    Immigrations Judge and Defendant made no application for relief. Finally, in the Order, the

8    Immigration Judge found that Defendant's waiver was knowing, voluntary, and intelligent.

9        Since the Immigration Judge reviewed the Stipulation which showed that Defendant was advised

10   of and waived his rights, the May 2006 deportation proceedings provided Defendant with the

11   opportunity for judicial review. Defendant fails to meet the second prong of 1326(d) and therefore, his

12   motion to dismiss should be denied.

13            **3.    The Entry of the Removal Order was Not Fundamentally Unfair**

14       Finally, Defendant cannot show his removal was fundamentally unfair. An underlying

15   deportation order is "fundamentally unfair" if (1) a defendant's due process rights were violated by

16   defects in his deportation proceeding, and (2) he suffered prejudice as a result of the defects. <u>United</u>

17   <u>States v. Ubaldo-Figueroa</u>, 364 F.3d 1042, 1048 (9th Cir. 2004); <u>United States v. Arrieta</u>, 224 F.3d 1076,

18   1079 (9th Cir. 2000); <u>United States v. Estrada-Torres</u>, 179 F.3d 776, 780-81 (9th Cir. 1999), <u>overruled</u>

19   <u>in part on other grounds</u>, <u>United States v. Rivera-Sanchez</u>, 247 F.3d 905 (9th Cir. 2001).

20            **a.    Defendant's Deportation Proceeding Did Not Violate Due Process**

21       Defendant claims that his due process rights were violated. His argument fails since he waived

22   any right to a hearing, he was not eligible for 212(h) relief, and he failed to attend his hearing.

23       First, the Immigration Judge reviewed the Notice to Appear, the Stipulation, and the United

24   States' Concurrence before signing the Order to remove Defendant from the United States to Mexico.

25   (Gov't Ex. 2.) The Stipulation states that Defendant's waiver is voluntary, knowing, and intelligent.

26   The Immigration Judge found that Defendant's waiver was voluntary, knowing, and intelligent.

27

28

Second, Defendant claims that he was eligible for 212(h) relief since he had an approved I-130 petition.[2/]  However, Defendant was ineligible for this relief.  To be eligible for 212(h) relief, the lawfully admitted alien must: (1) have not been convicted of an aggravated felony since his admission; and (2) have been living lawfully in the United States for seven years immediately preceding the dated of initiation of proceedings.  8 U.S.C. § 1182(h).

Here, Defendant fails to meet either ground.  Defendant offered no evidence to the Immigration Judge (or even now) as to any of these requirements.  Why?  He cannot meet them.

First, he had been convicted of multiple aggravated felonies. He was convicted on October 13, 2004, of corporal injury to a spouse, in violation of California Penal Code § 273.5(a) and received 73 days in jail.  See United States v. Gonzalez-Valerio, 342 F.3d 1051, 1056-57 (9th Cir. 2003) (holding that a conviction under California Penal Code § 273.5(a) is an aggravated felony that bars discretionary relief).  He was convicted on July 15, 2004, of possessing a controlled substance (methamphetamine), in violation of California Health and Safety Code § 11377 and received 16 months in prison.  This state conviction qualifies as an ""aggravated felony" under 8 U.S.C. § 1101(a)(43)(B) because it is (1) punishable under the federal Controlled Substances Act and (2) punishable by more than one year's imprisonment under applicable state law.  See United States v. Arellano-Torres, 303 F.3d 1173, 1179-80 (9th Cir. 2002); but see Ruiz-Vidal v. Gonzales, 473 F.3d 1072 (9th Cir. 2007) (requiring proof of substance); Ferreira v. Ashcroft, 382 F.3d 1045, 1049 (9th Cir. 2004) (finding no aggravated felony for sentence less than one year).  Second, his approved I-130 petition dated March 4, 2005 was granted less than seven years prior to his 2006 removal.  Thus, Defendant cannot show a due process violation.

Finally, Defendant was not present for the proceedings to be advised of or to apply for any form of 212(h) relief.  Under 8 U.S.C. § 1229a(b)(5)(A), "Any alien who, after written notice required under

---

[2/]The Stipulation provided Defendant the opportunity to apply for 212(h) relief even though he was not eligible for relief.  Defendant refused to pursue it.

Moreover, for any collateral attack, there must be a due process violation.  The alleged violation is the Immigration Judge's failure to advise Defendant that he was eligible for 212(h) relief.  However, the Ninth Circuit has "held that aliens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection." Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1166 (9th Cir. 2004); but see Ubaldo-Figueroa, 364 F.3d at 1050 (holding that it is a due process violation for an immigration judge to fail to inform an alien of his or her ability to apply for relief from removal).  So, Defendant is arguing he has a fundamental right to be advised of relief he has no fundamental right to receive.

paragraph (1) or (2) of section 239(a) [8 USCS § 1229(a)] has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, <u>shall</u> be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2))." (emphasis added.)  As his signature on the Notice to Appear and the Stipulation show, Defendant was served the Notice to Appear. Defendant did not appear.  In the Stipulation, Defendant admitted he was inadmissible as an alien present without inspection.  The Notice to Appear and Stipulation establish by clear and convincing evidence that he was inadmissible as an alien present without inspection.  <u>See</u> 8 U.S.C. §§ 1182(a)(6)(A)(i) (defining inadmissible as being present without inspection) and 1229a(e)(2) (defining inadmissible by reference to § 1182).  Therefore, the Immigration Judge was without discretion to grant any relief.

### b.       Defendant Cannot Establish Prejudice

An alien bears the burden of proving prejudice.  <u>See</u> <u>United States v. Proa-Tovar</u>, 975 F.3d 592, 585 (9th Cir. 1992) (en banc).  To show prejudice, the alien must demonstrate that he had "plausible grounds for relief from deportation."  <u>United States v. Arce-Hernandez</u>, 163 F. 3d 559, 563 (9th Cir. 1998).  Put differently, he "must show that 'a direct appeal could . . . have yielded a different result.'" <u>United States v. Corrales-Beltran</u>, 192 F.3d 1311, 1318 (9th Cir. 1999).  It is not enough to show that a procedural requirement was not complied with, or that an alien would have availed himself of missing procedural protections; the alien must "produce some concrete evidence indicating that the violation of a procedural protection actually had the potential for affecting the outcome of his or her deportation proceedings."  <u>United States v. Cerda-Pena</u>, 799 F.2d 1374, 1379 (9th Cir. 1986); <u>see also</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996).

Assuming he was eligible for 212(h) relief, without even looking at his equities, he cannot show prejudice.  As stated in <u>Galicia-Gonzalez</u>, stipulated removals **cannot** be challenged on the basis that a hearing before an immigration judge might have shown the alien was eligible for relief from removal. <u>Galicia-Gonzalez</u>, 997 F.2d at 604 ("Even if a hearing had been held, it would have accomplished nothing, because defendant had given up the game by conceding he was deportable.  Defendant therefore cannot show prejudice under <u>Proa-Tovar</u>.").

Even if Defendant had not "given up the game," he has the burden of showing that the Attorney General would have exercised his discretion in favor of granting relief.  See United States v. Gonzalez-Valerio, 342 F.3d 1051, 1056 (9th Cir. 2003).  In determining whether to grant such relief, the BIA balances "the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident." Matter of Roberts, 20 I. & N. Dec. 294, 298 (BIA 1991).  These considerations include the following:

> Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character. Id. at 584-85. Among the factors deemed adverse to an alien are the nature and underlying circumstances of the exclusion or deportation ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. Id. at 584. Moreover, one or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. Id.

> As the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Id. at 585.

Matter of Roberts, 20 I. & N. Dec. at 298-99 (listing considerations); see also Kahn v. INS, 36 F.3d 1412, 1414 (9th Cir. 1994).  If an applicant has a pattern of serious criminal activity, he must demonstrate "unusual or outstanding equities" in order to receive discretionary relief. Gonzalez-Valerio, 342 F.3d at 1056-57.

Defendant has presented no evidence of favorable equities.  On the other hand, there are many unfavorable equities making relief implausible.  Defendant's residence in the United States was less than seven years.  He showed no hardship.  Defendant has no history of employment or property.  Defendant did not prove any level of good character.  He had multiple convictions is a short period of time and apparently was beating on his family.  By entering the country within inspection, Defendant showed no respect for the immigration laws.  In the end, there are no favorable equities, there are many unfavorable equities, and there are no plausible grounds for relief.

14

IV

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED**

Defendant moves to suppress his statements. Defendant argues that his deportation proceeding and field statements should be suppressed.

A.     **Defendant's Motion Should Be Denied Without a Hearing**

The Court should deny Defendant's motion to suppress without a hearing. Under Ninth Circuit and Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of Defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing").

Here, in clear opposition to Local Rule 47.1(g), Defendant has failed to attach a declaration creating an issue of fact regarding Defendant's field admission or post-arrest Miranda waiver. As such, this Court should deny Defendant's motion to suppress, based on the Statement of Facts attached to the Complaint in this case, that all of Defendant's statements were voluntarily made.

B.     **Defendant's Deportation Statements Should Not Be Suppressed**

Defendant argues that the statements obtained during the deportation process should be suppressed because they were obtained in violation of Miranda. However, the Ninth Circuit has held that "Miranda warnings are not required before questioning in the context of a civil deportation hearing . . . because deportation proceedings are not criminal prosecutions, but are civil in nature." United States v. Solano-Godines, 120 F.3d 957, 960 (9th Cir. 1997); see also United States v. Salgado, 292 F.3d 1169, 1174 (9th Cir. 2002) (affirming the admission of the defendant's statements made to an INS agent handling civil immigration matters since her inquiries regarding the defendant's alien status were routine). This is because an immigration judge's questions are not reasonably likely to elicit an incriminating response at the time of the statement, and thus an alien is not interrogated within the meaning of Miranda. As the appellate court explained, "the immigration judge could not be expected to anticipate that two years later Solano would illegally reenter the United States and that his responses

1    to questions at his civil deportation hearing might incriminate him in a prosecution for this future

2    crime." <u>Solano-Godines</u>, 120 F.3d at 962.

3        The cases cited by Defendant are inapplicable.  The cases cited by Defendant address statements

4    taken with regard to crimes that have already been completed while the cases cited by the United States

5    address statements taken with regard to crimes that have not yet occurred.  Therefore, Defendant's

6    motion to suppress his statements should be denied.

7        **C.    Defendant's Pre-arrest Statements Should Not Be Suppressed**

8        Defendant argues that his statements made prior to his arrest were made while in custody.  In

9    <u>Miranda v. Arizona</u>, 396 U.S. 868 (1969), the Supreme Court held that under the Fourth Amendment

10   a person must be advised of his rights prior to incriminating questioning after custodial arrest.

11   Defendant's arguments are without merit.  First, Defendant was detained, not arrested, when he was

12   questioned. Second, Defendant was not subjected to incriminating questioning while in custody.  Third,

13   if Defendant was subjected to a stop, reasonable suspicion supported the stop.

14       **1.    Detention of Border Questioning Does Not Require a Miranda Warning**

15       First, detaining a person for routine border questioning is not custodial.  <u>See</u> <u>United States v.

16   Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001).  Consistent

17   with <u>Galindo-Gallegos</u>, Defendant was detained and asked immigration questions.   Any efforts to

18   distinguish <u>Galindo-Gallegos</u> are distinctions without a difference.  Defendant was apprehended in an

19   area known for the entry of illegal aliens near the border.  Defendant was with six other aliens.  Even

20   if Border Patrol Agent Nye had cuffed Defendant for his safety, it would not have converted this stop

21   into an arrest.  <u>United States v. Cervantes-Flores</u>, 421 F.3d 825, 829-30 (9th Cir. 2005) ("His use of

22   handcuffs was justified by Cervantes' flight and Wardlow's safety concern and thus did not convert the

23   stop into a custodial arrest.").  As such, there is no <u>Miranda</u> violation.

24       **2.    Reasonable Suspicion Existed to Detain Defendant and Establish His Identity**

25       Second, even if he was in custody, an investigatory detention, a brief seizure by police based on

26   reasonable suspicion of criminal activity, is an exception to the probable cause requirement of the Fourth

27   Amendment.  <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 26 (1968).

28

Here, after being seen moving north from the international border, reasonable suspicion existed to justify the stop. Border Patrol Agent Nye questioned Defendant as to his citizenship and his right to be in the country. Defendant responded that he was a not a United States citizen and was in the United States illegally. Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). Following discovery of Defendant's illegal attempt to enter the United States, Agents timely advised Defendant that he was under arrest. Defendant was also timely advised of his Miranda warnings, which he invoked. All statements prior to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made prior to arrest.

### D.    Routine Booking Information

Finally, upon detaining Defendant, Agents asked Defendant routine booking questions for the purpose of obtaining background biographical information for filling out a personal history report and a booking slip. The Supreme Court has held that routine booking questions reasonably related to law enforcement record keeping concerns are not testimony and are therefore outside the Fifth Amendment privilege that Miranda is designed to protect. See Pennsylvania v. Muniz, 496 U.S. 582, 600-602 (1990). "Routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections." United States v. Perez, 776 F.2d 797, 799 (9th Cir. 1985). Citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the Ninth Circuit has held that pre-Miranda questions regarding "where and when" a defendant was born "are normal questions 'attendant to arrest and custody,' so Miranda is not implicated." United States v. Arellano-Ochoa, 461 F.3d 1142, 1146 (9th Cir. 2006) (allowing the defendant's statements where he was charged with being a non-immigrant alien in possession of a firearm). Consistent with Muniz and Perez, the Ninth Circuit has allowed police officers to testify in § 1326 prosecutions about a defendant's statements of alienage taken during the booking process. See United States v. Salgado, 292 F.3d 1169, 1174 (9th Cir. 2002). Defendant's responses to the Agents' questions therefore should be admitted.

**V**

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED**

### A.    A-File Documents

Defendant argues that evidence of his deportation should be excluded. The United States intends to offer documents from the Department of Homeland Security's "A-File" that correspond to Defendant's name in order to establish his alienage, prior deportations, and that he was subsequently apprehended in the United States without having sought or obtained authorization from the Secretary of Homeland Security. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit addressed the admissibility of A-File documents in United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (denying a challenge based upon Crawford v. Washington, 541 U.S. 36 (2004)). In Bahena-Cardenas, the appellate court held that "the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter." Id.; see also United States v. Cervantes-Flores, 421 F.3d 825, 831 (9th Cir. 2005) (holding that "the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court."); United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997).

In Loyola-Dominguez, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A-File." Id. at 1317. The district court had admitted: (1) a prior warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) an order to show cause. The defendant argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his argument, holding that the documents were properly admitted as public records. Id. at 1318. The Court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d

533, 534-35 (9th Cir. 1980)).  The Court also held that such documents are self-authenticating and, therefore, do not require an independent foundation.  Id.

Courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation.  See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public records); United States v. Mendoza-Torres, 285 F. Supp. 629, 631 (D. Ariz. 1968) (admitting warrant of deportation); see also United States v. Ray, 920 F.2d 562, 566 (9th Cir. 1990) (admitting welfare documents under the business records exception).

Defendant may attempt to distinguish Hernandez-Herrera.  However, the Ninth Circuit could not be more clear when it held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule."  Hernandez-Herrera, 273 F.3d at 1218.

The Ninth Circuit has made clear that deportation documents are evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien.  Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien.  Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

19

1   United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

2       The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at

3   1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at

4   858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported

5   a defendant's § 1326 conviction:

6       The prosecution also presented several documents from the prior deportation proceeding.
        During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the
7       order to show cause that he is not a citizen or national of the United States and he is a
        native and citizen of Mexico. The prosecution presented the **order to show cause** and
8       an **advisement of rights form**, which Sotelo signed. The advisement of rights form
        stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution
9       presented the order of deportation and the warrant of deportation, evidencing Sotelo's
        actual deportation.

10

11  109 F.3d at 1449 (emphasis added). Regarding the warning to alien ordered deported, it is admissible

12  as evidence of Miguel Fimbres' intent to enter the United States illegally and lack of mistake.

13      Finally, as noted previously, in Loyola-Dominguez, the Ninth Circuit rejected any argument that

14  admission of the A-File documents violates his Sixth Amendment right to confront witnesses. Id. at

15  1318. Nothing has changed. See Bahena-Cardenas, 411 F.3d at 1074-75; Cervantes-Flores, 421 F.3d

16  825, 831. Thus, the Crawford holding does not affect the admissibility of statements that qualify for

17  admission under those hearsay exceptions.

18      The United States will seek to admit the A-File documents as a nontestimonial business records

19  and public documents. Therefore, any Confrontation Clause argument should be rejected. Accordingly,

20  with the proper foundation, the Court should allow the United States to admit documents from

21  Defendant's A-File.

22      **B.    Fingerprints**

23      Defendant claims that his fingerprints and identification should be suppressed because his

24  deportation was unlawful. Assuming Defendant's deportation was unlawful, the Court cannot suppress

25  his identification and fingerprints as repeatedly stated by the Supreme Court and Ninth Circuit.

26      The Supreme Court has held that "the 'body' or identity of a defendant or respondent in a

27  criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is

28  conceded that an unlawful arrest, search, or interrogation occurred." INS v. Lopez-Mendoza, 468 U.S.

1032, 1039, 1044 (1984); <u>see also</u> <u>United States v. Crews</u>, 445 U.S. 463, 474 (1980); <u>United States v. Del Toro Gudino</u>, 376 F.3d 997, 1001 (9th Cir. 2004) (holding that "the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity"); <u>United States v. Ramirez-Garcia</u>, 269 F.3d 945, 947 (9th Cir. 2001); <u>United States v. Parga-Rosas</u>, 238 F.3d 1209, 1215 (9th Cir. 2001) (refusing to suppress fingerprint exemplars taken five months after arrest), <u>United States v. Guzman-Bruno</u>, 27 F.3d 420 (9th Cir. 1994) (holding, in a § 1326 case, that prior Supreme Court and Ninth Circuit precedent "clearly foreclose[d] Guzman-Bruno's attempt to suppress the fact of his identity."); <u>United States v. Orozco-Rico</u>, 589 F.2d 433, 435 (9th Cir. 1978) (holding, in a § 1326 case, that "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence."); <u>Hoonsipilapa v. INS</u>, 575 F.2d 735, 738 (9th Cir. 1978). Thus, Defendant's motion to suppress his identity should be denied.

In <u>Del Toro Gudino</u>, 376 F.3d at 998, the defendant provided a name after being arrested. <u>Id.</u> The defendant was then fingerprinted. <u>Id.</u> After the results were returned, it was discovered that the defendant had provided a false name, he had a criminal history, and he had previously been deported. <u>Id.</u> The Ninth Circuit affirmed the denial of the defendant's motion to suppress his identity. <u>Id.</u> This is exactly what happened in this case. Defendant provided a name when arrested by Border Patrol, Defendant provided a second name later, and the agent report states that computer records confirmed Defendant's identity, and criminal and immigration histories. After this information was obtained, Defendant was interviewed and invoked. All of these actions were routine and the fingerprints of Defendant taken by Border Patrol should not suppressed.

## VII

## DEFENDANT'S MOTION TO EXCLUDE 404(B) AND 609 EVIDENCE

As noted previously, Defendant was provided a copy of his rap sheet and many of his conviction records. The United States intends to introduce his extensive criminal and immigration history as 404(b) and 609 evidence.

As evidence of other acts, the United States intends to introduce his prior immigration contacts listed above as well as his statements made in those apprehensions. Finally, all of his prior removals should be admissible.

1  These crimes, wrongs, or acts are relevant to Defendant's current case.  Rule 404(b) of the

2  Federal Rules of Evidence precludes the admission of evidence of "other crimes . . . to prove the

3  character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  Evidence

4  of other crimes, however, is admissible to prove "motive, opportunity, intent, preparation, plan,

5  knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).

6  The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under

7  Rule 404(b).  See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998).  The court

8  should consider the following: (1) the evidence of other crimes must tend to prove a material issue in

9  the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must

10 be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time.

11 Id.  In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403

12 balancing test - its probative value must not be substantially outweighed by the danger of unfair

13 prejudice.  See Fed. R. Evid. 403.

14 In United States v. Graham, 575 F.2d 739, 740 (9th Cir. 1978), the defendant was being

15 prosecuted for § 1326 and had previously been convicted of "being illegally in the United States."  The

16 district court admitted a probation officer's testimony that the defendant was the same person that had

17 previously been convicted of "being illegally in the United States."  Id.  The defendant appealed arguing

18 that the probation officer's testimony was not admissible.  Id.  Holding that "[t]his appeal approaches

19 the frivolous," the Ninth Circuit affirmed.  Id.

20 Similarly, in United States v. Bejar-Matrecios, 618 F.2d 81, 83-84 (9th Cir. 1980), the district

21 court admitted the defendant's prior § 1325 conviction in his § 1326 prosecution.  The Ninth Circuit

22 held that a prior § 1325 conviction is relevant to a § 1326 prosecution.  Id.  However, the certified copy

23 of the judgment and commitment order was too prejudicial because it was not introduced with a limiting

24 instruction.  Id.

25 Here, the United States will be requesting admission of a prior immigration contact, not a prior

26 conviction.  Defendant's prior apprehensions and removals prove that he is an alien and he intended to

27 enter the United States without permission, elements that Defendant may challenge at trial.  The proof

28 of Defendant's apprehensions and removals would be made by witnesses and certified records.

22

07CR3402-IEG

1    Defendant's apprehensions and removals occurred within 10 years of the date of the offense. Moreover,

2    with a limiting instruction, the probative value is not substantially outweighed by any prejudicial effect.

3    As impeachment, the United States will introduce Defendant's prior convictions listed

4    previously. The United States will request the convictions be redacted prior to introduction.

5    Federal Rule of Evidence 609(a) provides in pertinent part:

6    > For purposes of attacking the credibility of a witness, (1) evidence that
     > a witness other than an accused has been convicted of a crime shall be

7    > admitted, subject to Rule 403, if the crime was punishable by death or
     > imprisonment in excess of one year under the law under which the

8    > witness was convicted, <u>and evidence that an accused has been convicted
     > of such a crime shall be admitted if the court determines that the</u>

9    > <u>probative value of admitting this evidence outweighs its prejudicial effect
     > to the accused</u>; and (2) evidence that any witness has been convicted of

10   > a crime shall be admitted if it involved dishonesty or false statement,
     > regardless of the punishment.

11   Fed. R. Evid. 609(a) (emphasis added).

12   The Ninth Circuit has listed five factors that the district court should balance in making the

13   determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760 (9th Cir. 1987).

14   Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time

15   of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the

16   charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's

17   credibility. <u>Id.</u> at 762-763. The Ninth Circuit applied these factors in <u>United States v. Martinez</u>, 369

18   F.3d 1076, 1088 (9th Cir. 2004), and affirmed the defendant's impeachment with a sanitized drug

19   conviction in a § 1326 prosecution.

20   In this case, it is anticipated that Defendant will dispute at least one of the elements. Thus, as

21   in <u>Martinez</u>, his credibility is squarely at issue in this § 1326 prosecution. If Defendant chooses to

22   testify at trial, the United States should not be prevented from demonstrating Defendant's lack of

23   trustworthiness by utilizing his prior convictions for impeachment purposes.

24                                        **VII**

25        **DEFENDANT'S I-130 IS IRRELEVANT TO ANY ISSUES AT TRIAL**

26   During the suppression hearing, Defendant appeared to be arguing that the approved I-130

27   somehow precludes his prosecution. The Ninth Circuit has stated what is required for permission to

28   reapply:

                                          23

1

2

3

4

5

6

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

7

8

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). The I-130 is not evidence supporting that Defendant has applied for permission.

9

10

11

12

13

14

15

16

Further, Defendant cannot offer evidence of any I-130 to challenge his deportation. The lawfulness of the prior deportation is not an element of the offense under § 1326. See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (holding that the statute itself contains no such limitation, stating simply "[a]ny alien who has been arrested and deported or excluded or deported," 8 U.S.C. § 1326(1), "will be guilty of a felony if the alien thereafter, enters, attempts to enter, or is at any time found in the United States."). In fact, the Ninth Circuit has held that all § 1326(b)(2) requires is the alien's "physical removal." See, e.g., United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003).

17

18

## VIII

## DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS

19

20

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

21

22

## IX

## CONCLUSION

23

24

For the foregoing reasons, the United States asks that the Court deny Defendant's motions and limit further motions to those based on new law or facts.

25

26

27

28

DATED: August 15, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Christopher M. Alexander*
CHRISTOPHER M. ALEXANADER
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.   07CR3402-IEG |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| ISAAC RAMOS, | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' Response to Defendant's Motion to (1) Dismiss Due To Invalid Deportation, (2) Suppress Statements, (3) Suppress Evidence, and (4) Exclude 404(b) and 609 Evidence, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

      1.    Joan Kerry Bader, Esq.
              Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 15, 2008.

                          *s/Christopher M. Alexander*
                          CHRISTOPHER M. ALEXANDER