KAREN P. HEWITT
United States Attorney
ERIC J. BESTE
Assistant U.S. Attorney
California Bar. No. 226089
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5104
Fax: (619) 235-7055
Email: Eric.Beste@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ISAAC RAMOS, ) <br> ) <br> Defendant. ) <br> ) <br>  ) | Criminal Case No. 07CR3402-IEG <br><br> DATE:    September 5, 2008 <br> TIME:    1:30 p.m. <br> CTRM:   1 (4th Floor) <br> JUDGE:  Hon. Irma E. Gonzalez <br><br> UNITED STATES' S U P P L E M E N T A L RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Eric J. Beste, Assistant United States Attorney, and hereby files its Supplemental Response in Opposition to Defendant's Motion to Dismiss. This Supplemental Briefing addresses two questions raised by the Court at the motion hearing held on August 20, 2008: (1) Does recent Ninth Circuit authority, including Ram v. Mukasey, 529 F.3d 1238 (9th Cir. 2008), undermine the holding of United States v. Galicia-Gonzalez, 997 F.2d 602, 603-04 (9th Cir. 1993), and the government's reliance on Defendant's written stipulation of deportation? (2) Assuming defendant's deportation proceeding did not comply with due process, can he establish the "prejudice" necessary to require dismissal of the indictment? As explained below the answer to both questions is "no," and Defendant's Motion to Dismiss must be denied.

//

//

# I

# STATEMENT OF FACTS

To respond to this Court's two specific questions, the government submits the following abbreviated Statement of Facts relevant to Defendant's prior criminal record and deportation proceedings. Defendant has a series of criminal convictions, including:

- On July 17, 2003, Defendant was convicted of battery on a former spouse, in violation of California Penal Code § 243(e)(1) and received 90 days in jail.

- On February 18, 2004, Defendant was convicted of battery on a former spouse, in violation of California Penal Code § 243(e)(1) and received 60 days in jail.

- On July 15, 2004, Defendant was convicted of possessing a controlled substance (methamphetamine), in violation of California Health and Safety Code § 11377(a) and received a sentence of 16 months in prison, imposition of sentence suspended.

- On October 13, 2004, Defendant was convicted of inflicting corporal injury upon a spouse, in violation of California Penal Code § 273.5(a) and received 73 days in jail.

- On November 14, 2005, Defendant was convicted of false imprisonment, in violation of California Penal Code § 236 and received 16 months in prison. Upon his conviction for this offense, Defendant's probation was revoked for his 2004 conviction for inflicting corporal injury upon a spouse, and his 2004 conviction for possession of a controlled substance, and he was sentenced to 24 and 16 months, respectively.

On May 9, 2006, at the end of Defendant's custodial sentence in state prison, INS agents in Bakersfield, California, served on him a Notice to Appear ("NTA") alleging that he was deportable due to his prior criminal history and his being present in the United States without being admitted or paroled. Defendant was then transferred to the Eloy Detention Center in Eloy, Arizona. On May 11, 2006, a new NTA was prepared alleging that Defendant was deportable by virtue of his being present in the United States without being admitted or paroled. On May 11, 2006, Defendant signed a "Stipulated Request for Removal Order and Waiver of Hearing" which contained the following statements (in English and Spanish), among others:

1  • "I have received a copy of the Notice to Appear (NTA) dated <u>May 11, 2006</u>.  The NTA
2  contains my full, true, and correct name." (emphasis in original)
3  • "I have also received a Legal Aid Services list."
4  • "I have been advised of my right to be represented by an attorney of my choice, at my
5  own expense, during these proceedings.  **I waive this right.**  I will represent myself in
6  these proceedings." (emphasis added)
7  • "I have been advised that by signing this request, I will be giving up the following legal
8  rights that I would have in a hearing before an Immigration Judge: a) the right to
9  question witnesses; b) the right to offer and to object to evidence; c) the right to require
10 the government to prove my removability.  **Knowing this, I waive these rights** and
11 request that my removal proceedings be held without a hearing and that the Immigration
12 Judge issue an order based solely on the written record."  (emphasis added)
13 • "I admit that all of the factual allegations contained in the NTA are true and correct as
14 written."
15 • "I agree and concede that I am deportable or inadmissible as charged in the NTA."
16 • "I understand that I may qualify for one or more forms of relief from removal, including
17 voluntary departure.  **I knowingly and intelligently waive my right to apply for any**
18 **relief or protection from removal** for which I may be eligible under the Immigration
19 and Nationality Act or any other provision of law.  Such relief and protection may
20 include voluntary departure, adjustment of status, suspension of deportation or
21 cancellation of removal, registry, naturalization, political asylum, withholding of
22 removal, and protection under the Convention Against Torture." (emphasis added)
23 • "____ I have read or __X__ **I have had read to me in a language I understand, this**
24 **entire document.  I fully understand its consequences.  I submit this request for**
25 **removal voluntarily, knowingly, and intelligently**.  I realize that by signing this
26 document, I will be removed from the United States." (emphasis added)
27 • "I hereby waive appeal of the written order of removal."
28

- "I hereby certify that all the information I have given in this stipulated request is true and correct."

Govt.'s Resp. to Def.'s Mot. to Dismiss, Ex. 3, at 1-4. Defendant was also interviewed by Deportation Officer Christina Olson and asked (in Spanish) "Have you ever had any immigration documents issued by the U.S. Government?" and "To the best of your knowledge, has anyone filed a petition to grant you legal status in the United States?" Defendant's answer to both questions was the same: "No." Govt.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1, at 5. (copy of "Biographical Information" and certification page).

The Defendant's signed Stipulation, his Biographical Information, and a Concurrence from the Government was submitted to Immigration Judge John W. Davis on May 11, 2006. Immigration Judge Davis issued a written order, dated May 11, 2006, in which he found (based on the written documents) that Defendant had "waiv[ed] a personal appearance before an Immigration Judge." Id., Ex. 2, at 1. The Immigration Judge further found observed that "[i]n his stipulation, respondent states that he understands the consequences of his request and that he has entered his request voluntarily, knowingly and intelligently. **The Court finds the alien's waiver to be voluntary, knowing and intelligent.**" Id. (emphasis added). The Immigration Judge also found Defendant deportable (for being present in the country without being admitted or paroled), and concluded that Defendant had made no application for relief from removal. Id. Because there were no factual or legal issues in dispute, and the statutory and regulatory requirements for stipulated removal had been met, the Immigration Judge ordered Defendant removed to Mexico. Id. at 2. Defendant was driven to the international border later that day, and physically removed at Nogales, Arizona, to his home country of Mexico.

Defendant almost immediately reentered the United States and violated the conditions of his state parole. On December 28, 2006, Immigration and Customs Enforcement agents located him in Avenal State Prison, and reinstated his deportation order from May 2006. Id., Ex. 1, at 1-2. A warrant of deportation was issued for Defendant, and he was physically removed from the United States on January 5, 2007.

On November 21, 2007, Defendant was found hiding underneath some bushes near Otay Lakes Road. He admitted to being a citizen of Mexico and not having any right to be in the United States. He was charged with being a deported alien found in the United States, in violation of 18 U.S.C. § 1326.

## II

## **ARGUMENT**

At the last motion hearing, this Court asked whether the government's position on the validity of Defendant's stipulated deportation was impacted by <u>Ram v. Mukasey</u> and other recent immigration cases. Additionally, the Court inquired – assuming <u>arguendo</u> that Defendant's written waiver of his right to counsel in May 2006 failed to meet the requirements of the Due Process Clause – whether Defendant could demonstrate any prejudice. As explained below, the established caselaw in the Ninth Circuit finding written stipulations of deportation valid under the Due Process Clause has not been undermined by more recent cases. And as outlined in the government's initial Response in Opposition, Defendant cannot demonstrate prejudice because, among other reasons, his prior criminal record rendered him statutorily ineligible for relief.

### A. **DEPORTATION BASED ON A DEFENDANT'S WRITTEN STIPULATION AND WAIVER OF RIGHTS DOES NOT VIOLATE DUE PROCESS**

As pointed out in the government's initial Response in Opposition, the Ninth Circuit has squarely held that where, as here, a written stipulation of removal indicates that an alien "was advised of all relevant rights, waived them and conceded his deportability," the stipulation "satisfies the government's burden of showing a valid deportation for purposes of section 1326." <u>United States v. Galicia-Gonzalez</u>, 997 F.2d 602, 603-04 (9th Cir. 1993) (per curiam). The stipulation at issue in <u>Galicia-Gonzalez</u> was signed by defendant's attorney in the deportation proceedings, and provided the basis for the immigration judge's finding that defendant had waived his rights and was deportable. <u>Id.</u> at 603. "Though [defendant] didn't sign the stipulation, his counsel did, along with a declaration that she fully explained the contents of the agreement to him and that he entered it with full knowledge." <u>Id.</u> The Court of Appeals flatly rejected the defendant's claim that his waiver of the right to appeal was invalid; rather, it relied solely on the written stipulation to find that defendant had been advised of his rights and had validly waived them. <u>Id.</u> "[W]here the government introduced official records which <u>on their face</u> show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid." <u>Id.</u> at 604 (emphasis

1  added). Because defendant did not come forward with such evidence, his expedited removal was
2  sufficient for purposes of section 1326. Id.

3  The Ninth Circuit has also explained that the inquiry into a defendant's rights, and any waiver
4  of those rights, need not be personally conducted by an immigration judge to satisfy due process. In
5  United States v. Guerra de Aguilera, 600 F.2d 752, 753 (9th Cir. 1979) (per curiam), the defendant
6  raised a due process challenge to her section 1326 conviction "because the hearing officer never
7  personally asked her if she admitted that she was deportable." Id. Rather, her attorney orally stipulated
8  to her deportability, and submitted an "Application for Suspension of Deportation" that contained a
9  signed admission by defendant of her alienage. Id. Despite the fact that the immigration judge never
10 personally asked defendant whether or not she was an alien, the Court of Appeals affirmed the
11 conviction. It found alienage properly established in the deportation proceeding because "the hearing
12 officer had accepted a document executed by Guerra admitting her alienage." Id. As in the instant case,
13 the defendant in Guerra claimed that using her written admission in the deportation proceeding (as
14 opposed to a personal colloquy with the immigration judge) was constitutionally defective. But the
15 court disagreed, holding that "all of the process due Guerra under the Fifth Amendment was given to
16 her." Id.

17 This comports with the language of the regulation that prescribes the process due under the
18 procedure employed in this case. This language provides that <u>no hearing of any kind</u> is required for a
19 stipulated order of removal to be valid. Instead, an IJ can enter such an order based solely on his review
20 of the paperwork:

21 > An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien (or the alien's representative) and the Service.
22 > <u>The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charg-</u>
23 > <u>ing document, the written stipulation, and supporting documents, if any.</u>

24 8 C.F.R. § 1003.25(b) (emphasis added). That, of course, is consistent with the whole point of a
25 "stipulated" proceeding, which is designed to be expeditious. It would thwart that purpose to require
26 a voluntariness hearing in every case involving an unrepresented alien, as such a hearing would, by
27 definition, imply a right to call witnesses, take evidence, etc. Such a result could not truly be called
28 "stipulated."

As this Court observed, however, the Ninth Circuit has recently reiterated that an alien's alleged waiver of the right to counsel must, in fact, constitute a knowing, intelligent and voluntary waiver. In Ram v. Mukasey, 529 F.3d 1238 (9th Cir. 2008), an alien facing removal was advised of his right to counsel, and was granted a continuance to meet with an attorney. Id. at 1240. At the next hearing Ram stated that he had not yet retained counsel, but indicated that he was prepared to proceed with the hearing. The immigration judge continued the hearing a second time because an additional charge had been filed against Ram, and he wanted to give Ram time to prepare a response and see if he could retain an attorney. Id. At the third hearing, however, the immigration judge did not inquire whether Ram was waiving his right to counsel; he simply asked Ram whether he was ready to proceed. Ram answered in the affirmative, and at the conclusion of the proceedings he was found deportable. Id. at 1240-41. The Ninth Circuit held that a due process violation had occurred because the immigration judge "neither asked [Ram] whether he wished to proceed without an attorney nor determined whether there was good cause to grant [him] more time to obtain counsel." Id. at 1242 (alterations in original; quotations omitted). Under those circumstances the immigration judge could not simply ask Ram at the start of the third hearing whether he wished to proceed, because Ram had indicated at prior hearings that he wanted to avail himself of the right to counsel. See also Tawadrus v. Ashcroft, 364 F.3d 1099, 1103-04 (9th Cir. 2004) (finding implicit oral waiver during deportation hearing insufficient where "the IJ neither advised [petitioner] of the right to counsel at the time his original attorney withdrew, nor inquired whether [petitioner] wished to waiver this right.").

In contrast to the defective oral waivers at issue in Ram and Tawadrus, Defendant's waiver here came in the form of an unambiguous written waiver, signed by Defendant and reviewed by an immigration judge. Defendant never indicated any desire to retain the services of an attorney (as had the petitioner in Ram), and he was specifically advised that he had a right to counsel and explicitly waived that right (as contrasted with the petitioner in Tawadrus).

Similarly, Defendant's waiver of his right to a hearing was unequivocal. When providing Biographical Information to Deportation Officer Olson, Defendant denied ever having valid immigration documents, and claimed that no one had filed a petition to grant him legal status. The written stipulation

signed by Defendant clearly waived his right to a hearing, and to appeal from the decision of the immigration judge. On this record, this thorough waiver undoubtedly complied with due process.

To be sure, the panel opinion in <u>Ram</u> employed language suggesting that immigration judges should personally ask aliens questions during deportation hearings about the right to counsel. <u>See</u> <u>id.</u> at 1242. But this language was used because Ram allegedly waived his rights <u>during a deportation hearing</u>. The panel in <u>Ram</u> did not discuss those situations (such as happened in the instant case) in which an alien executes an unambiguous written waiver of the right to counsel, and does not personally appear before an immigration judge because he has waived his right to a hearing as well. Indeed, the <u>Ram</u> panel did not distinguish (or even cite) <u>Galicia-Gonzalez</u>, or cases from other circuits approving the use of expedited removals based on written stipulations. It cannot plausibly be argued that the three-judge panel in <u>Ram</u> intended to overrule <u>Galicia-Gonzalez</u>, <u>sub</u> <u>silentio</u>, or that it had the authority to do so, <u>United States v. Gay</u>, 967 F.2d 322, 327 (9th Cir. 1992) ("one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel").

While <u>Galicia-Gonzalez</u> has not been addressed by the Ninth Circuit in recent years, other circuits have similarly held that written stipulations of deportation, and the concomitant waivers contained therein, do not offend the Due Process Clause. For example, in <u>United States v. Rangel de Aguilar</u>, 308 F.3d 1134 (10th Cir. 2002), a defendant was convicted of violating section 1326 after having been removed pursuant to expedited procedures similar to those employed here. Defendant challenged the validity of her underlying deportation by claiming that because she was summarily removed without a hearing (after having signed a consent form in which she was advised of her rights and waived them), her deportation violated due process. <u>Id.</u> at 1136. Similar to Defendant, Aguilar argued that due process required something similar to what is required under Fed. R. Crim. P. 11 – a personal advisement of her rights, and oral waiver of those rights, in open court. <u>Id.</u> at 1137. The Tenth Circuit flatly rejected this argument, observing that the "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." <u>Id.</u> at 1138 (quoting <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1038 (1984)).

> [T]he Constitution does not require a record more substantial than that created in the course of this matter: written proof of wavier. We are aware of no authority suggesting that an audible record of waiver is required in any context. Indeed, we note that in other

      contexts in which Constitutional protections apply, validity of a waiver does not even
      depend upon the existence of a <u>written</u> record."

Id. at 1138 (emphasis in original) (citations omitted).  Because the defendant offered no evidence showing that she was coerced into the waiver, or that she did not understand her rights, she had no basis to collaterally attack her deportation.  Id. at 1139.

     In sum, Ninth Circuit law continues to support the use of written waivers in deportation proceedings.  While waivers must be clear, and a court cannot simply assume a waiver based on a petitioner's request to proceed in a certain way, an otherwise proper deportation will not be found to violate due process simply because the petitioner's waiver was made in writing, as opposed to orally.  Because nothing in Ram or other recent immigration cases undermines the holding of Galicia-Gonzalez, Defendant's challenge to his May 2006 deportation must fail.

**B.  DEFENDANT CANNOT DEMONSTRATE ANY PREJUDICE RESULTING FROM AN ALLEGED DEFECT IN HIS DEPORTATION**

     As previously argued, even if Defendant could prove that his deportation did not comport with due process his collateral attack would still fail because, among other reasons, he cannot show any prejudice.  Govt.'s Resp. at 13-14.  "[A] deportation is lawful even if the proceeding does not comply with every jot and tittle of the immigration laws.  If the defendant was legally deportable and, despite the INS's errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326."  Galicia-Gonzalez, 997 F.2d at 603.[1]

     At the last motion hearing, Defendant argued that he satisfied the "prejudice" prong of his collateral attack because (1) his prior convictions were not of a sort to deny him relief from deportation under section 212(h), and (2) his family circumstances would have demonstrated the "extreme hardship" necessary to warrant relief under that section.  His argument was based in part on an application in March 2001 by his spouse (a legal permanent resident) on Form I-130, and the approval of that

---

[1]    Defendant bears the burden of proving prejudice.  See United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir. 1992) (en banc).  To show prejudice, the alien must demonstrate that he had "plausible grounds for relief from deportation."  United States v. Arce-Hernandez, 163 F. 3d 559, 563 (9th Cir. 1998).

application in May 2005.[2] Both of these arguments are flawed, because they minimize the seriousness of Defendant's criminal history, and misconstrue the legal requirements for obtaining relief under section 212(h).

The Immigration and Nationality Act ("INA") prescribes that "any alien convicted of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible."  8 U.S.C. § 1182(a)(2)(A)(i)(II).[3]  A waiver of this exclusion may be sought under section 212(h) of the INA for "an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien . . . ."  8 U.S.C. § 1182(h)(1)(B). However, a waiver under section 212(h) applies only "insofar as [the controlled substance offense] relates to a single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h); Miranda-Gayton v. Gonzales, 225 Fed. Appx. 634, 635, 2007 WL 867580 at *1 (9th Cir. 2007) (affirming BIA's dismissal of appeal because defendant's prior conviction of possessing marijuana for sale rendered 212(h) inapplicable); Amadi v. Ashcroft, 270 F. Supp. 2d 336, 339 (E.D.N.Y. 2003) ("Section 212(h) provides a waiver in drug cases only for single drug possession offenses that involve 30 grams or less of marijuana."); Alvarez-Garcia v. INS, 234 F. Supp. 2d 283, 288 (S.D.N.Y. 2002) (same); United States v. Padilla-Herrera, 2002 WL 31973719, *2 (D. Or. 2002) ("An

---

[2] While the I-130 was "approved," there is no evidence a visa was ever granted to Defendant or that he ever applied for one. Indeed, from the time of his deportation hearing in May 2006, through at least May 2007, bulletins from the U.S. State Department conclusively establish that no visas were available to citizens of Mexico if their petitions were filed after January 1, 2001. See Exhibit A, at 3, 5, 7, 10, 12, 14, 16, 19, 21, 23, 25, 27, 29 (portions of Visa Bulletins indicating cut-off dates for Mexican applicants seeking family-based visas, identified as class "2A" visas). Because Defendant's wife's I-130 application was filed effective March 19, 2001, it was impossible for him to obtain a visa through at least May 2007. As Defendant could only have obtained relief from deportation if a visa was immediately available to him, see 8 U.S.C. § 1255(a), the lack of an immediately available visa at the time of his deportation (and for at least another full year) is a separate basis to conclude that he has not suffered any prejudice.

[3] This provision does not apply if an alien has committed "only one crime," that one offense had a maximum possible penalty of one year of imprisonment, and the alien was not sentenced to a term of imprisonment of greater than six months. 8 U.S.C. § 1182(a)(2)(A)(ii). The exclusion clearly applies to Defendant, as he has several criminal offenses and his controlled substances offense resulted in a custodial sentence of 16 months.

individual who has been convicted of certain enumerated crimes is eligible for relief from deportation if he meets the requirements of § 212(h). Under that statute, however, a waiver is available for those convicted of drug crimes only if the conviction related to 'a single offense of simple possession of 30 grams or less of marijuana.' 8 U.S.C. § 1182(h). Defendant's 1992 deportation followed his conviction for the sale of heroin. Defendant, therefore, was not eligible for relief from deportation under § 212(h) under any circumstances. Accordingly, Defendant was not denied due process when the [IJ] failed to inform him of the possibility of a waiver under § 212(h)."); Custodio v. INS, 2002 WL 1608329, *2 (D. Conn. 2002). Because Defendant was convicted in 2004 of possession of a controlled substance (methamphetamine), in violation of California Health and Safety Code § 11377(a), he was statutorily ineligible in May 2006 for relief under section 212(h). Thus, Defendant cannot demonstrate even a possibility that his deportation proceeding would have been any different if had he not unequivocally waived his rights and conceded deportation.

Even assuming the foregoing statutory bar did not apply, Defendant still cannot make a plausible showing that he would have been entitled to section 212(h) relief on his equities. The Ninth Circuit has held that "a § 212(h) waiver will be granted only where there is 'great actual or prospective injury' or 'extreme impact' on [a] citizen family member, beyond the 'common results of deportation.'" United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998) (citing Shooshtary v. INS, 39 F.3d 1049, 1051 (9th Cir. 1994)). At the last hearing, Defendant proffered that one of his children suffers from behavior problems, and submitted documents purportedly supporting his claim that he plays a vital role in the family. But he failed to support those assertions, and does not explain to this Court how his various submissions show anything close to an "extreme impact." To the extent Defendant claims to support his family in the country, "[t]he difficulties in having to move one's family elsewhere and anticipated difficulties in finding work have been held to constitute the common results of deportation," such that they do not, by themselves, amount to "extreme hardship." Arce-Hernandez, 163 F.3d at 564. Moreover, Defendant has not addressed how his removal could result in a "great actual or prospective injury" to his spouse, considering that he has been convicted of beating and falsely imprisoning her on several occasions. Defendant cannot plausibly claim to have a such positive impact on his family's life considering his almost continuous incarceration on criminal offenses since 2004. For these reasons, and

those outlined in the government's initial Response in Opposition, Defendant cannot satisfy the "prejudice" prong of his collateral attack.[4]

## IV
## CONCLUSION

Based on the government's initial Response in Opposition, and this Supplemental Response, the United States requests that this Court deny Defendant's Motion to Dismiss the Indictment.

DATED: August 25, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Eric J. Beste*
ERIC J. BESTE
Assistant United States Attorney

Attorneys for the Plaintiff
United States of America

---

[4] Although Defendant has not raised it, it bears noting that Defendant was ineligible for "fast track" voluntary departure under 8 U.S.C. § 1229c(a)(1). Cf. United States v. Ortiz-Lopez, 385 F.3d 1202, 1204-05 (9th Cir. 2004) (reversing 1326 conviction because defendant was not advised of his right to voluntary departure, and was not statutorily precluded from seeking this relief). First, Defendant was specifically advised of his right to seek this type of relief, and executed a written waiver of that right. Supra at 2 ("I understand that I may qualify for one or more forms of relief from removal, including voluntary departure. I knowingly and intelligently waive my right to apply for any relief or protection from removal for which I may be eligible under the Immigration and Nationality Act or any other provision of law. Such relief and protection may include voluntary departure . . . ."). Second, this relief is unavailable if the alien has been convicted of an "aggravated felony," Ortiz-Lopez, 385 F.3d at 1205 n.3, such as inflicting corporal injury to a spouse in violation of California Penal Code § 273.5(a), United States v. Gonzalez-Valerio, 342 F.3d 1051, 1056-57 (9th Cir. 2003) (holding that a conviction under California Penal Code § 273.5(a) is an aggravated felony that bars discretionary relief). Defendant was convicted of just such an offense in 2004, and was therefore ineligible for voluntary departure. Third, regardless of whether his prior violent offenses qualify as "aggravated felonies," he is statutorily ineligible if he cannot prove that he was a person of "good moral character" for at least 5 years immediately preceding an application for voluntary departure. 8 U.S.C. § 1229c(b)(1); Abedini v. INS, 971 F.2d 188, 192 (9th Cir. 1992) (to establish eligibility for voluntary departure, the alien bears the burden of proving his "good moral character" for the requisite time-period). The INA prohibits a finding of "good moral character" if the person, during the relevant time period, has sustained any kind of drug-related conviction other than for simple possession of less than 30 grams of marijuana. 8 U.S.C. § 1101(f)(3) (citing, inter alia, 8 U.S.C. § 1182(a)(2)(A)(II)); Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996) (per curiam) (affirming finding of statutory ineligibility under 8 U.S.C. § 1254(e), predecessor to 8 U.S.C. § 1229c, based on conviction for possession of cocaine). Again, Defendant's conviction for possession of methamphetamine would preclude any request for voluntary departure.

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.   07CR3402-IEG |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| ISAAC RAMOS, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, ERIC J. BESTE, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, together with statement of facts and memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.   Joan Kerry Bader, Esq.
     Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2008.

*s/Eric J. Beste*
ERIC J. BESTE