KAREN P. HEWITT
United States Attorney
ERIC J. BESTE
Assistant U.S. Attorney
California State Bar No. 226089
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5104
Fax: (619) 557-7055
Email: Eric.Beste@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.    07CR3402-IEG |
| Plaintiff, | ) | DATE:        September 9, 2008 |
| v. | ) | TIME:        9:00 a.m. |
| | ) | CTRM:        1 (4th floor) |
| ISAAC RAMOS, | ) | JUDGE:      Hon. Irma E. Gonzalez |
| Defendant. | ) | TRIAL MEMORANDUM |
| | ) | |

The UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Eric J. Beste, Assistant U.S. Attorney, files its trial memorandum.

## I

## STATEMENT OF CASE

### A.    INDICTMENT

On December 19, 2007, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Isaac Ramos ("Defendant") with being a deported alien found in the United States after deportation in violation of 8 U.S.C. § 1326.  On December 20, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.  The Court set a motion hearing date which was continued on January 28, 2007, March 3, 2008, April 1, 2008, June 2, 2008, and July 21, 2008.

//

**B.    TRIAL STATUS**

Trial is scheduled for Tuesday, September 9, 2008, at 9:00 a.m., before the Honorable Irma E. Gonzalez.  The United States anticipates that its case-in-chief will last one day.

**C.    STATUS OF COUNSEL**

Defendant is represented by appointed counsel, J. Kerry Bader.

**D.    CUSTODY STATUS**

Defendant is in custody.

**E.    INTERPRETER**

The United States does not need an interpreter for its witnesses.  Defendant will require the assistance of a Spanish language interpreter.

**F.    JURY WAIVER**

Defendant has not waived trial by jury.

**G.    PRETRIAL MOTIONS**

On July 16, 2008, Defendant filed motions to dismiss due to an invalid deportation, to suppress statements, to suppress evidence, and to file further motions.  On August 7, 2008, Defendant filed additional briefing in support of his motions to dismiss due to an invalid deportation, to suppress statements, and to suppress evidence.  On August 12, 2008, the Court tentatively denied Defendant's motion to suppress evidence and heard testimony regarding Defendant's field statements.   On August 20, 2008, the Court continued the evidentiary hearing and denied Defendant's motion to suppress his field admissions.  The Court requested additional briefing on the question of whether Defendant's 2006 deportation complied with due process, and scheduled a motion in limine hearing on September 5, 2008.

The government filed supplemental briefing in opposition to Defendant's motion to dismiss on August 28, 2008.  Defendant filed a declaration in support of his motion on September 2, 2008.

**H.    MOTIONS IN LIMINE**

On August 7, 2008, contained within supplemental briefing concerning his motion to dismiss the Indictment, Defendant filed the following motions in limine:  (a) to preclude A-File documents as hearsay; (b) to preclude A-file documents under the Sixth Amendment; (c) to exclude the

certificate of non-existence of record; (d) to preclude 404(b)/609 evidence; and (e) to prohibit A-File custodian testimony regarding immigration proceedings. The government responded to these motions on August 15, 2008, and also moved (a) to preclude the defense from arguing the validity of his deportation at trial, and (b) to preclude the defense from introducing evidence concerning his wife's I-130 application. On August 12, 2008, this Court made the following rulings: (a) allow A-File documents to be admitted (upon proper foundation) to prove alienage, but not conclusively; (b) deny Defendant's challenges under the Sixth Amendment to the A-File documents; and (c) allow the certificate of non-existence of record.

## I.    STIPULATIONS

The parties have not entered into any stipulations.

## J.    DISCOVERY

The United States has complied with all of its discovery obligations, including periodic requests from the defense for information about the other illegal aliens apprehended with him. Defendant first produced some discovery at the hearing on August 20, 2008, when he submitted numerous documents in support of his claim that he would have been eligible for relief under section 212(h).[1]

# II

## STATEMENT OF FACTS

### A.    The Instant Apprehension

On Wednesday, November 21, 2007, at approximately 6:30 p.m., Border Patrol Agents Lindsey Nye and Robert Schiller were assigned to the Jamul, California area of operations. They responded to a call from infrared scope operator Border Patrol Agent Erick Cortez. During the call, Border Patrol Agent Cortez stated that he had just seen six people south of Otay Lakes Road coming down the "Pole line draw." Upon arrival, Border Patrol Agents Nye and Schiller exited their vehicles and began to search the area. With assistance from Border Patrol Agent Cortez, Border Patrol Agent Nye located a group of five individuals. Border Patrol Agent Nye identified himself

[1]    As explained in the government's supplemental briefing, filed on August 25, 2008, Defendant was statutorily ineligible for relief under section 212(h).

in both the English and Spanish languages. He requested that the individuals exit the brush and sit down for safety reasons. Each of these individuals, including Defendant, complied.

Border Patrol Agent Thomas Ward also responded to the call with his narcotics / human detector dog. The dog soon gave a passive alert to a sixth individual, a female, laying face down a short distance from the five other aliens. While Border Patrol Agent Ward rewarded his dog, Border Patrol Agent Schiller escorted the sixth individual to the larger group. Border Patrol Agent Nye obtained statements from each of the six individuals regarding their citizenship and authorization to enter the United States. Each of the six, including Defendant, admitted to being citizens of Mexico with no legal right to remain in the United States. At the scene Defendant told Border Patrol agents that his name was "Jose Ayala" and that he was born on July 20, 1967.[2] After Defendant was entered into the Automated Biometric Identification System later that day at Brown Field Station, agents discovered that Defendant's true name was Isaac Ramos, that his birth date was July 30, 1966, and that he had significant prior criminal and immigration histories.

**B.    Defendant's Statements**

At approximately 11:30 p.m., while being video taped, Border Patrol Agent Brian Lee advised Defendant in the Spanish language of his Miranda warnings as witnessed by Border Patrol Agent Andrew Roman. Defendant stated that he understood his rights and wanted to remain silent. Agent Lee also advised Defendant in the Spanish language of his communication rights with the Mexican Consulate; Defendant stated that he understood this right and did not want to speak with the Consulate.

**C.    Defendant's Prior Statements**

On or about May 9, 2006, Defendant was interviewed at Golden State, CCF, McFarlane, California for purposes of determining his eligibility to remain in the United States by Special Agent Leroy Odom. Defendant admitted to entering the United States without inspection and to being a citizen of Mexico.

---

[2]    As defendant testified at the motion hearings on August 12 and 20, 2008, he lied to agents in order to avoid the California state parole violation facing him under his true name.

1   On or about May 11, 2006, Defendant was interviewed for purposes of determining his

2   eligibility to remain in the United States by Detention Officer Christina Olsen.  Defendant admitted

3   to entering the United States without inspection and to being a citizen of Mexico.  At the same time,

4   Defendant signed a written stipulation (witnessed by Detention Officer Olsen) in which he again

5   admitted to entering the United States without inspection and to being a citizen of Mexico.

6   On or about January 4, 2007, Defendant was interviewed after his release from Avenal State

7   Prison, Avenal, California, for purposes of determining his eligibility to remain in the United States.

8   Defendant admitted to entering the United States without inspection and to being a citizen of

9   Mexico.

10   **D.    Defendant's Criminal and Immigration History**

11   Defendant has a series of convictions which include the following:  (1) Defendant was

12   convicted on July 17, 2003, of battery on a former spouse, in violation of California Penal Code

13   § 243(e)(1) and received 90 days in jail; (2) Defendant was convicted on February 18, 2004, of

14   battery on a former spouse, in violation of California Penal Code § 243(e)(1) and received 60 days

15   in jail; (3) Defendant was convicted on July 15, 2004, of possessing a controlled substance

16   (methamphetamine), in violation of California Health and Safety Code § 11377 and received 16

17   months in prison; (4) Defendant was convicted on October 13, 2004, of corporal injury to a spouse,

18   in violation of California Penal Code § 273.5(a) and received 73 days in jail; and (5) Defendant was

19   convicted on November 14, 2005, of false imprisonment, in violation of California Penal Code § 236

20   and received 16 months in prison.  At the time of his conviction for this last offense, Defendant's

21   probation was revoked for his 2004 conviction for inflicting corporal injury upon a spouse, and his

22   2004 conviction for possession of a controlled substance, and he was sentenced to 24 and 16 months

23   on those charges, respectively.

24   Concerning his immigration history, on May 11, 2006, Defendant was ordered deported by

25   an Immigration Judge after he waived his rights to a hearing and stipulated to his deportability.

26   Defendant was physically removed from the United States to Mexico the same day.  On December

27   28, 2006, after Defendant was located in state prison, his May 2006 deportation was reinstated.

28   Defendant was physically removed from the United States a second time on January 5, 2007.

1

### III

2

### PERTINENT LAW

3

**A.     8 U.S.C. § 1326, ALIEN REENTRY AFTER DEPORTATION**

4

The United States must prove beyond a reasonable doubt that:

5

        1.      Defendant is an alien;

6

        2.      Defendant was deported from the United States;

7

        3.      Defendant knowingly and voluntarily entered the United States; and

8

9

        4.      Defendant was found in the United States without the consent of the United States Attorney General or his designated successor, the Secretary of the Department of Homeland Security.

10

11

See 9th Cir. Crim. Jury Instr. 9.5 (2003) (Modified).

12

**B.     ALIENAGE**

13

The Ninth Circuit has consistently held that "deportation documents are admissible to prove

14

alienage under the public records exception to the hearsay rule."   See United States v.

15

Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation

16

documents to prove alienage).   The Ninth Circuit has also made clear the type of deportation

17

documents that may be used as evidence of alienage:

18

Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir.

19

1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a

20

defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying**

21

**deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien.

22

Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446,

23

1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an

24

INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); United States v.

25

Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation**

26

**order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the

27

defendant was a Mexican citizen).

28

6

1    United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

2        The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d

3    at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63

4    F.3d at 858.  In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which

5    supported a defendant's § 1326 conviction:

6            The prosecution also presented several documents from the prior deportation
        proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer,

7            allegations in the order to show cause that he is not a citizen or national of the United
        States and he is a native and citizen of Mexico. The prosecution presented the **order**

8            **to show cause** and an **advisement of rights form**, which Sotelo signed.  The
        advisement of rights form stated that Sotelo admitted he was in the United States

9            illegally. Finally, the prosecution presented the order of deportation and the warrant
        of deportation, evidencing Sotelo's actual deportation.

10

11   109 F.3d at 1449 (emphasis added).  At trial, the government intends to offer many of these types

12   of evidence, including (1) oral admissions made by Defendant to immigration officials while in

13   prison, (2) written admissions made by defendant during his stipulated deportation, and (3) field

14   admissions by Defendant that he was a citizen of Mexico with no legal right to be in the United

15   States.

16       **C.**    **PHYSICAL REMOVAL**

17       The Ninth Circuit has held that deportation "refers to the removal from the country of aliens

18   who are physically present in the United States."   United States v. Romo-Romo, 246 F.3d 1272,

19   1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir.

20   2003) ("Section 1326 speaks only of 'removal.'" . . . "It plainly turns on the alien's physical removal

21   -- not the order of removal.").  As a result, the United States need only prove beyond a reasonable

22   doubt that Defendant physically left the country sometime between the time he was ordered deported

23   and the time he was found in the United States.  See United States v. Bahena-Cardenas, 411 F.3d

24   1067, 1074-75 (9th Cir. 2005) (citation omitted).  A warrant of deportation may be sufficient

25   evidence of physical removal.  Id.  The government intends to offer the two warrants of deportation

26   contained in Defendant's A-file, evidencing his removals in May 2006 and January 2007.

27   //

28   //

## D.    **EXPRESS CONSENT**

The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so.

As a result, any cross-examination regarding the lack of permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

There is a second reason this type of cross-examination is irrelevant. It is true that the Ninth Circuit's model jury instruction requires the United States to prove the defendant's lack of permission to re-enter the United States beyond a reasonable doubt. Ninth Circuit Manual of Model Jury Instructions – Criminal § 9.5; see United States v. Rivera-Relle, 333 F.3d 914, 919 (9th Cir.

2003); <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039 (9th Cir. 2000).  However, unlike a true

"element," lack of permission to re-enter is more like an affirmative <u>defense</u>.  The Fifth Circuit has

stated,

> [I]t is unclear whether Attorney General consent is even an element of 8 U.S.C.
> § 1326 or only an affirmative defense.  The "unless" language would seem to
> indicate that it is an exception and is therefore more in the nature of a defense which
> the defendant must establish.

<u>United States v. Terrazas-Carrasco</u>, 861 F.2d 93, 96 (5th Cir. 1988).  The Supreme Court has never

ruled on this question, but in <u>United  States v. Mendoza-Lopez</u>, 481 U.S. 828, 830-31 (1987), the

Court called the "consent" clause an "exception" to the statute.  The Court described section 1326

as providing  the following:

> "Any alien who–
> "(1) has been arrested and deported or excluded and deported, and thereafter
> "(2) enters, attempts to enter, or is at any time found in the United States . .
> .
> "shall be guilty of a felony, and upon conviction thereof, be punished by
> imprisonment of not mor than two years, or by a fine of not more than $1,000, or
> both."

<u>Id.</u> at 830-31.  In a footnote, the Supreme Court added that the "consent" clause was an "exception"

to the statute:

> The statute excepts those aliens who have either received the express consent of the
> Attorney General to reapply for admission or who otherwise establish that they were
> not required to obtain such consent. 8 U.S.C. § 1326(2)(A), (B).

<u>Mendoza-Lopez</u>, 481 U.S. at 831, n.2.  The Court was not presented with the issue of whether the

"consent" clause is an element or an affirmative defense.  However, the language suggests that it

should more properly be treated as a defense, and not as an element at all.  <u>See</u> <u>United States v.</u>

<u>Gravenmeir</u>, 121 F.3d 526, 528 (9th Cir. 1997) (holding, in possession of a machine gun

prosecution, that "the exceptions contained in part (2) of the subsection establish affirmative

defenses to the defined offense.").  The government submits that Congress intended "consent" to

be an affirmative defense.  After all, a defendant is in a much better position than the United States

to know whether he has sought or obtained permission to re-enter the United States.  Thus, unless

Defendant intends to assert an affirmative defense that he reapplied, this type of cross-examination

about the search performed for permission to enter is not relevant.

1          Finally, Defendant should not be permitted to present evidence of his wife's Form I-130

2    application in 2001, or the Department of Homeland Security's eventual approval of this I-130 in

3    2005.  As pointed out in the government's Response to Defendant's Motions [Dkt. 29] at 23-24, an

4    approved I-130 is not "consent" pursuant to section 212, and cannot provide the basis for a defense

5    to the charges in this case.  Moreover, as explained in the government's Supplemental Response in

6    Opposition [Dkt. 36] at 8-10 & n.2, Defendant serious criminal history rendered him statutorily

7    ineligible for relief under section 212, despite DHS's approval of his wife's I-130.  Indeed, no visas

8    were even available to persons such as defendant (i.e., spouse of an LPR from Mexico who applied

9    in March 2001) when he was first deported in May 2006, nor did any become available until over

10   a year later.  Because his wife's I-130 has no relevance to the charge facing him here, Defendant

11   should not be permitted to interject this confusing and irrelevant evidence into the trial.

12        **E.**      **LAWFULNESS OF PRIOR DEPORTATION**

13         Since physical removal is all that is required, the lawfulness of a defendant's prior

14   deportation is not an element of the offense under § 1326 and should not be presented to the jury.

15   See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc).  The United

16   States need only prove that a deportation proceeding actually occurred and that the defendant was

17   consequently deported.  United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

18         A deportation order or warrant is sufficient to establish the prior deportation.  Id.; see also

19   United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir. 1980) (holding a warrant of deportation is

20   admissible as a Public Record, pursuant to F.R.E. 803(8)).  A tape recording or transcript of the prior

21   deportation is not required to prove the prior deportation.  Medina, 236 F.3d at 1030-31.

22         Furthermore, although a defendant charged pursuant to § 1326 can preclude the United States

23   from relying on a prior deportation in which the proceedings were so procedurally flawed that it

24   "effectively eliminated the right of the alien to obtain judicial review," the mere absence of a tape

25   recording or transcript of the deportation proceeding does not establish that the deportation was

26   "fundamentally unfair."  See id. at 1031-32 (citations omitted).

27   //

28   //

07CR3402-IEG

1

**F.     PRIOR CONVICTION**

A prior felony conviction is not an element of § 1326(a) and need not be presented to the jury.  See United States v. Alviso, 152 F.3d 1195, 1199 (9th Cir. 1998) (citing Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998)).  The holding in Almendarez-Torres remains controlling law until expressly overruled by the Supreme Court.  See United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir. 2000).

**G.     DUPLICATES**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original.  See Fed. R. Evid. 1003.

**IV**

**WITNESSES**

The United States reserves the right to add, omit, substitute or change the order of witnesses. Presently, the United States intends to call the following witnesses during its case-in-chief:

1.     Border Patrol Agent Robert Schiller

2.     Border Patrol Agent Lindsey Nye

3.     Border Patrol Agent Thomas Ward, Jr.

4.     Border Patrol Agent Erick Cortez

5.     Senior Patrol Agent Brian Lee

6.     Deportation Officer Christina Olsen

7.     Immigration Enforcement Agent Leroy Odom

8.     Immigration Enforcement Agent Shijie Fang

9.     Immigration Enforcement Agent Jerald Sullivan

10.    Immigration Enforcement Agent Christopher Galvez

11.    Fingerprint Expert David Beers

07CR3402-IEG

**V**

**EXHIBIT LIST**

An exhibit list will be provided at trial.  The United States anticipates offering the following exhibits at trial, all of which have been produced to counsel.  The United States reserves the right to add, delete or amend its exhibit list.

1.      Map

2.      Photograph of apprehension site

3.      May 9, 2006 Warrant for Arrest

4.      May 9, 2006 Notice to Appear

5.      May 11, 2006 Notice to Appear

6.      May 11, 2006 Stipulation and Consent to Deportation

7.      May 11, 2006 "Biographical Information" and Certification

8.      May 11, 2006 Immigration Judge Order

9.      May 11, 2006 Warrant of Removal/Deportation

10.     May 11, 2006 Warning to Alien Ordered Removed or Deported

11.     December 28, 2006 Warrant of Removal/Deportation

12.     December 28, 2006 Warning to Alien Ordered Removed or Deported

13.     Certificate of Non-existence of Record

14.     December 27, 2006 Fingerprint Card

15.     November 21, 2007 Fingerprint Card

16.     August 21, 2008 Fingerprint Card

17.     November 21, 2007 Notice of Rights

18.     November 21, 2007 Warrant of Removal

**VI**

**PROPOSED VOIR DIRE**

1.      Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?

2.      Has anyone had an unpleasant experience with any law enforcement personnel?

3.  Has anyone had any disputes with any agency of the United States Government?

4.  Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?

5.  Does anyone have relatives or close friends who have been deported or removed?

6.  Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in immigration issues?

7.  Does anyone believe that immigration laws are too harsh?

8.  Does anyone believe everyone should be allowed to enter the United States?

9.  Does anyone believe that it should be legal to enter the United States without authorization?

10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?

11. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?

12. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?

13. Does anyone think that, regardless of the strength of the evidence, they will have trouble deciding whether the Defendant is guilty or not guilty?

14. Does anyone think they cannot decide whether a person is guilty or not guilty?

15. Does anyone have religious or moral beliefs which will make it difficult for them to make a decision strictly based on the law and facts of this case?

//
//
//
//
//
//
//

07CR3402-IEG

1

# VII

2

## JURY INSTRUCTIONS

3      The United States will submit proposed jury instructions under separate cover.  The United

4  States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

5      DATED: September 2, 2008

6                                          Respectfully submitted,

7                                          KAREN P. HEWITT
                                           United States Attorney
8
                                           *s/ Eric J. Beste*
9                                          ERIC J. BESTE
                                           Assistant U.S. Attorney
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                       UNITED STATES DISTRICT COURT

3                      SOUTHERN DISTRICT OF CALIFORNIA

4    UNITED STATES OF AMERICA,            )    Criminal Case No.   07CR3402-IEG
                                          )
5                        Plaintiff,       )
                  v.                      )    **CERTIFICATE OF SERVICE**
6                                         )
     ISAAC RAMOS,                         )
7                                         )
                         Defendant.       )
8                                         )
     _____)
9

10        IT IS HEREBY CERTIFIED THAT:

11        I, Eric J. Beste, am a citizen of the United States and am at least eighteen years of age.  My
     business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.
12
          I am not a party to the above-entitled action.  I have caused service of United States' Trial
13   Memorandum on the following parties by electronically filing the foregoing with the Clerk of the
     District Court using its ECF System, which electronically notifies them.
14
          1.      Joan Kerry Bader, Esq.
15                Attorney for Defendant

16        I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
     Service, to the following non-ECF participants on this case:
17
          None
18
     the last known address, at which place there is delivery service of mail from the United States Postal
19   Service.

20        I declare under penalty of perjury that the foregoing is true and correct.

21        Executed on September 2, 2008.

22
                                                   *Eric J. Beste*
23                                                 ERIC J. BESTE

24

25

26

27

28