JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California  92101-6128
Telephone:  (619) 699-5995
FAX (619) 699-5996
Attorney for Defendant Ramos

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
THE HON. IRMA E. GONZALEZ

| | |
|---|---|
| THE UNITED STATES OF AMERICA ) ) ) v. ) ) ) ISAAC RAMOS, ) ) Defendant ) ) ) _____ ) | CASE NO.07cr3402IEG September 5, 2008 1:30 p.m. SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO SUPPRESS |

TO: KAREN HEWITT, UNITED STATES ATTORNEY;
     ERIC BESTE, ASSISTANT UNITED STATES ATTORNEY

Defendant Isaac Ramos, by and through his attorney, J. Kerry Bader, has served this and the government with his supplemental points and authority in support of his motion to dismiss the Indictment on this day.

Respectfully submitted,          /s/Joan Kerry Bader
                                 Joan Kerry Bader
                                 Attorney for Isaac Ramos
Dated: September 4, 2008

**I.**
**Ram v. Mukasey, 529 F.3d 1238 (9th Cir. 2008) mandates dismissal of the Indictment in this Case**

At the second evidentiary hearing held in this case, on or about August 20, 2008, the Court referenced the above-mentioned case [hereinafter "Ram"] and queried the parties as to its potential impact on the case at bar. "Transcript of Evidentiary Hearing of August 2, 2008, hereinafter [TRX II]."Pp. 121-122.

In Ram, the Ninth Circuit held that a removal was invalid.  The Ninth Circuit affirmed its prior holdings that require an IJ to inquire of the alien whether he wishes to obtain counsel, then the IJ must give the alien a reasonable opportunity to obtain counsel and then the IJ *must* "assess" whether any waiver of counsel is knowing and voluntary." Id.   A failure to meet all three of these prongs is a failure of Due Process.

The Ninth Circuit held that while the IJ had actually spoken with Mr. Ram, the IJ failed the alien by not *specifically asking Mr. Ram if he wished to continue his case, or proceed without an attorney nor did the IJ determine if there was good cause to postpone the hearing so Mr. Ram could seek counsel and the IJ failed to question Mr. Ram about the implications of proceeding without an attorney.* Id.  The Ninth Circuit remanded for a new removal hearing.

Here, the same problem exists, and even worse.  The IJ in Mr. Ramos' case never even saw him, much less spoke to him about his rights; *there is certainly not one iota of evidence that the IJ in Mr. Ramos' case made any inquiries as to Mr. Ramos' rights, whether he advised him of his rights or if he engaged in even a perfunctory colloquy about his rights.*

Indeed, the evidence in this case proves that the IJ <u>never</u> spoke with Mr. Ramos. Thus, the removal is null and void. The statute that permits this "process" is uconstitutional.

Just as in Mr. Ram, Mr. Ramos was never told the government had the burden of proving his prior criminal record, or that he was inadmissible. In Mr. Ramo's' case, the government DHS attorneys in Eloy, Arizona did not even allege that Mr. Ramos had a prior record on the Notice to Appear. They simply alleged he had entered without inspection. Therefore, Mr. Ramos was not only not apprised of his rights, he was not apprised of his defenses, nor was even allowed to see the documents or evidence that the government would have to use against him to prove the allegations. <u>Id.</u> Given the procedure used in Mr. Ramos' case, it is not likely that the Ninth Circuit would deem Mr. Ramos' deportation legally or Constitutionally valid. *See also:* <u>Castro-Cortez v. Gonzalez</u>, 239 F.3d 1037 (9th Cir. 2001) (overruled on other grounds).

In <u>Castro-Cortez</u>, the Ninth Circuit was considering the validity and the possible retroactive application of the statute that authorizes the "reinstatement" by INS officers of a previously-issued removal or deportation order. While the Court was eventually overruled on the retroactive question, the question as to whether a reinstatement procedure meets the Constitutional requirements of the Due Process Clause was raised by the Petitioner and addressed by the Ninth Circuit, but was never addressed by the Supreme Court or overruled. The Due Process concerns raised by "reinstatements" of a prior deportation order are relevant in Mr. Ramos' case.

The Ninth Circuit noted how at least one of the Petitioner's in <u>Castro-Cortez</u> had been misadvised that even though he asked if he

could see an Immigration Judge, he could "voluntarily depart" the United States. Id. at 1041  More significantly, the Circuit Court criticized the reinstatement procedure because by refusing to allow the aliens to see an Immigration Judge, they are limiting "the opportunity for the alien 'to make a statement contesting this determination' [which simply does not qualify as an administrative remedy." Id. at 1045.

The Ninth Circuit criticized the reinstatement process because it prevents the alien from receiving the basic procedures and constitutional protections that aliens are permitted and instead, replaces "them with a summary process in which an Immigration Officer alone makes the relevant determinations."  This is precisely the fatal problem in Mr. Ramos' "removal."  An Immigration Officer cannot make an assessment as to whether he "knowingly, intelligently or voluntarily" waived his rights.  As the Ninth Circuit said, "[a] neutral judge is one of the most basic due process protections." Id. at 1048-1049.  The Court continued: "Fundamental to due process is the right to counsel, and we have previously held that in deportation hearings, aliens have 'the right to obtain counsel of their choice at their own expense.'" Id. at 1050.

The Ninth Circuit further concluded that the reinstatement process, like the "stipulated removal" process, gives "absolutely no advance notice, no opportunity to review or produce documents, and no opportunity to consult with, much less be represented by, counsel. The proffered opportunity to make a statement does not, under any standard, qualify as an administrative remedy, and therefore, 'failure' to exhaust that opportunity does not affect the right to appeal. Id. at 1045.

The lack of an administrative record and the failure to allow an alien to see the INS records or to make his or her own record also stymied the Ninth Circuit:

> The INA precludes us from considering facts not in the administrative record, INA section 242b4, and it also prohibits us from remanding this matter to the district court for fact-finding. INA section 242a1. Thus, were we required to determine the validity of Castro's contention that he had not actually illegally reentered, we would be deprived of the benefit of any evidence that Castro wished to be introduce. Under the regulations, aliens such as Castro have no opportunity to introduce evidence before the Immigration Officer, and the INA prohibits them from introducing evidence in the federal courts. The contention that this procedure comports with the fundamental notions of due process is difficult for us to comprehend. Id. at 1049-1050.

**The "stipulated" deportation procedure presents many of the same Constitutional flaws. Not only is a respondent like Mr. Ramos prevented from presenting evidence or witnesses or documents, he is prevented from seeing the evidence against him, or to challenge it. And, in this unique seemingly situation, Mr. Ramos was prevented from seeing or even knowing about evidence, *i.e.* his approved visa application, from which he might present as a defense to an IJ. The INS officers control this, by not giving the respondent these critical rights and privileges that an alien had worked so hard to obtain. *See also:* United States v. Hates, 941 F.2d 993 (9th Cir. 1991); United States v. Akins, 276 F.3d 1141 (9th Cir. 2000)(even with colloquys with district judge, waiver of counsel invalid). There is not even a recording of the "deportation procedure." To have a lawyer from DHS in Eloy testify as to the deportation is making a witness of one of the litigants which makes the attorney, if she were to testify in this matter, incompetent, as she is a party opponent..**

Without knowing he had a visa application, much less not knowing the ins and outs of intricate immigration laws, how would Mr. Ramos even know that he had an approved visa, that he could obtain counsel and/or a continuance, much less, that he could speak to a supposedly neutral immigration judge about these possibilities of relief and his fundamental rights?  The procedure as it appears to stand, and as it occurred in this particular case, are unconstitutional as they completely failed to uphold Mr. Ramos' fundamental rights.[1]

Had Mr. Ramos known of his rights, had he been given the opportunity to seek counsel, he could very well have sought relief under section 212h of Title 8.  His prior felonies, which were never proven, could have been waived under 212h, or even vacated, as the guilty please upon which they rested were not made knowingly or intelligently, as Mr. Ramos did not know of his approved visa and thus he could not have made the proper decision to plead or to bargain for a different disposition.  This is not at all unlikely: in <u>United States v. Kwan</u>, the Ninth Circuit granted a writ of corum nobis and vacated a guilty plea to bank fraud on grounds that Kwan's original defense counsel provided ineffective assistance because the lawyer, when asked by the defendant if he might be deported as a result of his conviction, misadvised his client and told him it was a remote

---

[1] At the original motion hearing in this case, August 12, 2008, defense counsel attempted to elicit testimony from Mr. Ramos indicating tht he never knew he had an approved visa until the undersigned advised him of such approval after having finally seen Mr. Ramos' A file in the U.S. Attorney's office. Page he AUSA objected to this line of questioning on page 72 of the August 12, transcript,but later on August 20, Mr. Ramos testified on page 13 that he"never told [the Border Patrol] about my papers.  I didn't know I had my papers.  Because if he would have asked me if I was an illegal, I would have answered no, but I never know.  Unitl now that I am here, I know that immigration approved my papers, because I would have...."

possibility, when in fact, a sentence of over one year or a finding of a loss of over $10,000.00 is an aggravated felony for which there is no defense to deportation, the Ninth Circuit said that the lawyer failed to keep informed of the changes in immigration law and "effectively misled" his client by telling him it was unlikely he would be deported.   407 F.3d 1005 (9th Cir. 2005)

Here, even if Mr. Ramo's public defender knew of the immigration consequences of certain convictions, had he known that the misdemeanor was the most deleterious convictions, no doubt he would have tried to avoid that a plea to that charge.  More importantly, without knowing that Mr. Ramos had an approved visa, there is no way he could have known that Mr. Ramos could request a 212h waiver.

Mr. Ramos had a very good record of work, supporting his U.S. citizen wife and children, and his children, who clearly miss him, in particular the younger one who it is believed has acquired migraine headaches despite the fact he is only in second grade, because he misses hi father so much.  The older son, Isaac, is also facing extreme psychological hardship, in conjunction with the devastating economic hardship the family is facing without their father's support. *See:* Exhibits six through ten, medical documents for Adrian and Isaac and letters from Mr. Ramo's wife and three children, all of whom are United States citizens.

Certainly, his alleged misdemeanor possession conviction, may very well have been vacated by counsel on grounds of legal error as Mr. Ramos was not made aware of his pending visa nor that the misdemeanor itself might sink any chances he might have for relief. Assuming this misdemeanor conviction were proven, the it could be vacated because of the unintelligent guilty plea.

**It should also be noted that the Immigration Service did not even allege the prior convictions as a basis for removal in Eloy. Mr. Ramos was only accused of Entry Without Inspection, which is a completely inaccurate accusation, as the Immigration Service knew full well that Mr. Ramos had been inspected and approved of a visa. No matter, a *nunc pro tunc* application 8 USC section 212i would waive that allegation very easily as it is a common waiver given to persons accused of Entry Without Inspection.**

The exception is spelled out at section 242.8(a) of the Code of Federal Regulations that gives an Immigration Judge authority to grant *nunc pro tunc* permission to reapply for admission to an alien in deportation proceedings who is charged with deportation on the ground that he re-entered after having been deported, without having first secured permission from the Attorney General. Therefore, because Mr. Ramos was charged in the Notice to Appear with this same allegation that he entered without permission or inspection, he could have tried to Adjust his Status had the Immigration Judge properly advised him. *See:* Matter of Ducret, Interim Decision 2483 (BIA 1976); Matter of Manneh, 16 I. & N. Dec. 272, 273 (BIA 1977).

## II.

### CONCLUSION

**Given the facts and legal authority in this particular case, Mr. Ramos respectfully asks this Court to grant his motion to dismiss the Indictment.**

Dated: September 5, 2008         /s/Joan Kerry Bader
                                 Joan Kerry Bader for defendant
                                 Ramos